## POST v. SUPERVISORS.

### AMOSKEAG BANK v. OTTAWA.

1. Whether a seeming act of the legislature is or is not a law, is a judicial question to be determined by the court, and not a question of fact to be tried by a jury.
2. The construction uniformly given to the Constitution of a State by its highest court is binding on the courts of the United States as a rule of decision.
3. An act of the legislature of a State, which has been held by its highest court not to be a statute of that State, because never passed as its Constitution requires, cannot be held by the courts of the United States, upon the same evidence between different parties, to be a law of the State, although referred to in later statutes of the State as an existing law, and assumed to be such in earlier cases in the State court, in which its validity was not, and by the settled practice of that court could not be, controverted.
4. The act of the General Assembly of Illinois of Feb. 18, 1857, purporting to authorize the issue of certain municipal bonds, is of no force or effect, by reason of its not appearing by the legislative journals to have been passed as required by the Constitution of 1848.
5. Under the statute of Illinois of Feb. 12, 1849, copies of the original daily journals kept by the clerks of each house of the legislature, made by persons contracted with or employed for the purpose, in well-bound books fur-

nished by the secretary of state, and afterwards deposited and kept in his office, are official records, copies of which certified by him are competent evidence.

6. The printed journals of either house of a legislature, published in obedience to law, are competent evidence of its proceedings.

ERROR to the Circuit Court of the United States for the Northern District of Illinois.

The facts are stated in the opinion of the court.

*Mr. Sanford B. Perry, Mr. David T. Littler*, and *Mr. George S. Eldredge* for the plaintiffs in error.

*Mr. T. Lyle Dickey* and *Mr. Philip Phillips* for the defendants in error.

MR. JUSTICE GRAY delivered the opinion of the court.

These actions are brought upon municipal bonds, purporting to have been issued under an act of the General Assembly of Illinois of Feb. 18, 1857. The facts of the cases do not substantially differ from those which appeared when one of the cases was before this court at October Term, 1876, and the principles then affirmed must control the present decision. See *Town of South Ottawa* v. *Perkins* and *Supervisors of Kendall County* v. *Post*, 94 U. S. 260. Those principles may be summed up as follows : —

*First*, By the law of the State of Illinois, as often declared by the Supreme Court of that State, before as well as after the execution of the bonds in suit, the provisions of the Constitution of 1848, requiring each house of the legislature to keep and publish a journal of its proceedings, and, on the final passage of all bills, to take the vote by ayes and noes, and ordaining that no bill shall become a law without the concurrence of a majority of all the members elect of each house, are not merely directory ; but if the journals, being produced or proved, fail to show that an act has been passed in the mode prescribed by the Constitution, the presumption of its validity, arising from the signatures of the presiding officers and of the executive, is overthrown, and the act is void.

*Second*, Whether a seeming act of the legislature is or is not a law is a judicial question to be determined by the court, and not a question of fact to be tried by a jury.

*Third*, The construction uniformly given to the Constitution of a State by its highest court is binding on the courts of the United States as a rule of decision.

*Fourth*, An act of the legislature of a State, which has been held by its highest court not to be a statute of the State, because never passed as its Constitution requires, cannot be held by the courts of the United States, upon the same evidence, to be a law of the State.

*Fifth*, That which is not a law can give no validity to bonds purporting to be issued under it, even in the hands of those who take them for value and in the belief that they have been lawfully issued.

It was accordingly held that the act of the General Assembly of Illinois of Feb. 18, 1857, under which the bonds in suit were issued, having been adjudged by the Supreme Court of that State in 1870 in the cases of *Ryan* v. *Lynch* (68 Ill. 160) and *Miller* v. *Goodwin* (70 id. 659), upon proof that the journals did not show it to have been enacted in conformity with the requirements of the Constitution, to have never become a law, and to have conferred no power, although referred to in later statutes as an existing law, those decisions must govern the action of the courts of the United States.

The weight of those decisions as authoritative expositions of the Constitution of the State is not affected by the fact that these plaintiffs were not parties to the suits in which they were delivered. *Township of Elmwood* v. *Marcy*, 92 U. S. 289; *Township of East Oakland* v. *Skinner*, 94 id. 255.

Nor is it of any importance that the act of 1857 had been assumed to be an existing law in *Dunnovan* v. *Green* (57 Ill. 63), and in *Force* v. *Batavia* (61 id. 99); for in each of those cases the validity of the statute was not controverted, and by the established practice of that court no evidence of the contents of the journals could be considered on appeal, which had not been produced and made part of the case in the court below. *Illinois Central Railroad Co.* v. *Wren*, 43 Ill. 77; *Bedard* v. *Hall*, 44 id. 91; *Grob* v. *Cushman*, 45 id. 119. See also *People* v. *Dewolf*, 62 id. 253, 256; *Binz* v. *Weber*, 81 id. 288, 291.

The copies of the journals, certified by the secretary of state, and the printed journals, published in obedience to law,

- are both competent evidence of the proceedings in the legislature.

By virtue of the statute of Illinois of Feb. 12, 1849,[1] the copies of the original daily journals kept by the clerks of the two houses, made by persons contracted with or employed for the purpose as authorized and directed by that act (though not sworn public officers), in well-bound books furnished by the secretary of state, pursuant to the duty thereby imposed upon him, and afterwards deposited and kept in his office, are official records in his custody, copies of which certified by him are admissible upon settled rules of evidence, as well as by the decision of the Supreme Court of Illinois in *Miller* v. *Goodwin*, above cited; and neither the competency nor the effect of such copies is impaired by the loss or destruction of the daily journals or minutes.

The remark of the judge delivering the opinion in *Illinois Central Railroad Co.* v. *Wren* (43 Ill. 79), " We are not aware of any law which makes the printed journal evidence of the contents of the original," was but *obiter dictum* (for the case was decided upon the ground that no copy whatever of the journal had been made part of the case before the court), and is in conflict with the general current of decision in that court and in this. *People* v. *Campbell*, 8 id. 466; *Prescott* v. *Trustees of Illinois & Michigan Canal*, 19 id. 324; *Happel* v. *Brethauer*, 70

[1] By the Constitution of Illinois of 1848, art. 3, sect. 39, " the General Assembly shall provide by law that the copying, printing, binding, and distributing the laws and journals shall be let by contract to the lowest bidder."

By the statute of Jan. 16, 1836, in force at the time of the adoption of that Constitution, the journal of each house of the General Assembly was required to be "kept in well-bound volumes;" the clerks of each house were required to furnish daily to the public printer " a copy of the journal kept by them respectively," and after the final adjournment to ." deposit the original journals kept by them respectively, with the secretary of state;" and the secretary of state was required to "superintend the printing of the journals." Statutes of Illinois of 1839, p. 551; Revised Statutes of Illinois of 1845, c. 84, sect. 3.

By the statute of Feb. 12, 1849, the secretary of state was required, before the meeting of the General Assembly, to publish an advertisement "inviting proposals for copying the laws, joint resolutions, and journals of the General Assembly," and to "give the contract to the lowest competent responsible bidder," and was also required " to furnish a well-bound book, in which the journals shall be copied," and, in case the person contracting for the copying should fail to perform his contract, to cause the same to be done by some competent person. 2 Statutes of Illinois (Scates ed.), p. 734.

id. 166; *Watkins* v. *Holman*, 16 Pet. 25, 55, 56; *Bryan* v. *Forsyth*, 19 How. 334; *Gregg* v. *Forsyth*, 24 id. 179.

For these reasons, the act of Feb. 18, 1857, under which all the bonds in suit purport to have been issued, must be held to be of no force or effect, and the plaintiffs can maintain no action on the bonds. Upon the attempt made at the argument to support their validity in the first case under the statute of Nov. 6, 1849, and in the second case under the statute of March 6, 1867, it is enough to say that there is nothing in the record to show that either of those statutes was ever complied with by the defendant in issuing the bonds, or relied on by the plaintiff in purchasing them.

*Judgments affirmed.*