[No. 261.    January 23, 1889.]

CHAVEZ, APPELLANT, v. LUNA, COLLECTOR, ET AL., APPELLEES.

TAXATION—BILL TO ENJOIN LEVY AND COLLECTION OF TAXES—JURISDICTION OF THE COURTS TO REVIEW ACTION OF THE LEGISLATURE IN THE ELECTION, QUALIFICATION, AND RETURN OF ITS MEMBERS—VALIDITY OF ACTS OF SESSION OF 1884.—On a bill in equity by a taxpayer, to enjoin the levy and collection of a tax to pay the interest on bonds issued to provide for the erection of a capitol building at Santa Fe, the building of a penitentiary, and for creating and providing for

the office of county assessor, under the acts of March 29, 1884, March 14, 1884, and April 3, 1884, respectively, on the ground of their invalidity, the legislature not being a lawfully constituted body, and having no power to pass said acts; to which a demurrer was interposed—Held: The general superintending control possessed by the supreme and district courts of this territory over the inferior courts does not extend to the judicial action of the houses of the legislative assembly, where it has been deemed necessary to confer upon them such powers to enable them to perfect their organization and perform their duties as such. But no such powers have been delegated by congress to the territorial legislature in express terms, as usually done by the constitutions of the states, so that the rules of decision there have no application here. By section 7 of the organic act, it is provided that all laws passed by the legislature and approved by the governor shall be submitted to congress for its approval, and if disapproved, shall be null and void. Whether congress intended to confer such powers upon the legislature to finally determine the election, qualifications, and return of its members, the court does not decide. · But the court will presume that the acts in question, and all other acts passed at the session of 1884, were submitted to congress in obedience to the fundamental law of the territory; and that they received the tacit approval of congress, in the absence of anything to show its disapproval. Congress having thus full power over the subject, and given its assent, there is no ground for the jurisdiction of the courts.

APPEAL, from a decree in favor of defendants, from the Second Judicial District Court, Valencia County. Decree affirmed.

The facts are stated in the opinion of the court.

H. L. WARREN for appellant.

WM. BREEDEN, attorney general, for appellees. ·

HENDERSON, J.—The complainant, and appellant here, filed in the district court of Valencia county a bill to enjoin the collector, assessor, and board of county commissioners from levying and collecting from him any taxes on account of interest accruing on certain bonds. It is charged that a tax levy had been made, and that the defendant, as sheriff and collector of the county, was about to seize and sell his property unless the taxes levied to pay interest on the

bonds were paid.   He charges that the bonds are void, because the pretended acts under which they were issued were never passed by the legislative assembly of this territory, and therefore of no legal validity.   The acts assailed as void are entitled as follows: "An act to provide for the erection of a capitol building in the city of Santa Fe," approved March 29, 1884; and "An act authorizing the building of a penitentiary in the territory of New Mexico, and regulating its management," approved March 14, 1884; and a certain other act, entitled, "An act to create the office of county assessor, and to provide for the election and qualification of such officer," approved April 3, 1884.   A demurrer was interposed to the bill, and sustained, and, the complainant electing to stand upon his bill, it was dismissed, and the case brought here by appeal.

The bill is, in substance, the following:   Complainant is a citizen and taxpayer of Valencia county, and the defendants are the sheriff and collector, county assessor, and county board of commissioners.   The defendant Luna, as collector of taxes, had a warrant in his hands for the collection of the territorial and county taxes, including the taxes levied to pay the interest accruing on the bonds issued under the first two of the acts herein set forth, and was about to seize and sell complainant's property, and would do so unless the taxes were paid or the officer restrained by injunction from so doing.   The bill further recites that by virtue of an act of congress approved February 14, 1884, a session of the legislative assembly of New Mexico was held, commencing on the third Monday in February, 1884; that according to an act of congress approved June 19, 1878, the council of said legislative assembly was composed of twelve members; that by the act of February 14, above referred to, the "members elect to the legislative assembly of the territory in November, 1882, and all vacancies legally filled since that time,

if any, were declared to be legal members of the legislative assembly thereby authorized, subject to all legal contests; that on the day appointed for the convening of the said legislative assembly under the act aforesaid, only five members appeared and took the oath of office; that after the oath of office had been administered by the secretary of the territory to the said five members of the council, on motion of one of the five, one Thomas B. Catron was declared to be entitled to a seat in the body, who was thereupon admitted, and took the oath of office; that after the admission of Thomas B. Catron, on motion and without contest, Charles C. McComas and J. M. Montoya were declared by the vote of the six members, including Mr. Catron, entitled to seats in the body, who, thereupon, appeared and took the oath of office, and were admitted as members of the council; that said council was constituted or composed of the five persons first mentioned, as legally entitled to seats in the body, and Thomas B. Catron and Charles C. McComas and J. M. Montoya, until about the twenty-sixth day of March, 1884, when William H. Keller, one of the original five, absented himself, and never again participated in the proceedings of the body; that on the twenty-sixth day of March one Jose Inocencio Valdez, of Colfax county, who had been elected to the council, appeared for the first time and took the oath of office, and thereafter participated in the proceedings of the body. It is further stated in the bill that eight persons alone composed the body at the several dates when the acts sought to be declared invalid were passed. The journal record kept by the council is referred to as evidence of the truth of the charges contained in the bill.

The position assumed in argument on behalf of the appellant is this: In order to give the pretended acts set forth in the bill the force and effect of valid laws, they must have been lawfully enacted by a legally con-

stituted legislative assembly of this territory. It is contended that the full membership of the council consisted of twelve duly chosen councilmen, and that a less number than seven was not a quorum to do business for any purpose, or to determine any question concerning or affecting the organization of that branch of the legislative assembly. It is urged that five persons, not being a majority of the body, could not organize or pass upon the election and qualifications of other persons asserting claims to membership in the body; that the action taken by the five in seating Mr. Catron was void for want of power in them to do any valid act, and that for the same reason the action taken by the six, including Catron, in admitting McComas and Montoya, was for the like reason also void; that these steps taken in order to get a quorum were illegal, arbitrary, and void. It is further argued that executive recognition could not give to the action of a minority any validity whatever, as the act of congress of March 14, 1884, was, and was by congress intended to be, a limitation on the powers of the legislative assembly in the matter of determining the membership of the body; that the only power left to the council under the act of congress above referred to was the determination of valid contests pending before the body; and that the journal shows that there was neither a contest pending nor a quorum voting when the three last named persons were admitted. Appellant cites a long list of cases in support of the jurisdiction of the court to entertain the bill and grant the relief prayed.

There is no doubt whatever about the power of the court to inquire into the facts attending the passage of a bill by the legislature of a state, where the constitution of the state prescribes the mode to be observed by the legislature in passing bills. Where the constitution has been violated, the acts are void. In Spangler v. Jacoby, 14

JURISDICTION of courts to review action of legislature.

Ill. 297, the court said: "It is competent to show from the journals of either branch of the legislature that a particular act was not passed in the mode prescribed by the constitution, and thereby defeat its operation altogether." To the same effect, see State v. McBride, 4 Mo. 303; Purdy v. People, 4. Hill, 384; Green v. Weller, 32 Miss. 651; Hensoldt v. Petersburg, 65 Ill. 157; Town of South Ottawa v. Perkins, 94 U. S. 267; Post v. Supervisors, 105 U. S. 668.

The rule of law, however, declared in the foregoing class of cases does not apply to the state of facts presented by this bill. The question here is not one of mere mode of passage of the acts assailed. There was a quorum present and voting for the several bills at the date of their passage through the council. The only question, therefore, is one of organization of the body. Can the courts entertain a bill to review the action of the legislature in the manner of its organization or the election and qualifications of its members? In the case of People v. Mahaney, 13 Mich. 481, COOLEY, J., said: "As the courts are bound judicially to take notice of what the law is, we have no doubt it is our right as well as our duty to take notice, of the printed statute books, also of the journals of the two houses, to enable us to determine whether all the constitutional requisites to the validity of a statute have been complied with. But, although the courts must take judicial notice of legislative action so far as it affects the validity of statutes, they have no such power as respects the facts attending the election of the several members; and it remains to be seen whether we can notice those facts, even after they have been spread upon the legislative journals, and make them the basis of judgments, the retrospective effect of which would be to unseat members of a body long since adjourned, and to annul its action by declaring the votes of such members illegal and invalid." And further on in the same opinion,

it is said: "It is a sufficient answer to this argument that, while the constitution has conferred the general judicial power of the state upon the courts and officers specified, there are certain powers of a judicial nature which, by the same instrument, are expressly conferred upon other bodies or officers, and among them is the power to judge of the qualifications, elections, and returns of members of the legislature. The terms employed clearly show that each house, in deciding, acts in a judicial capacity, and there is no clause in the constitution which empowers this or any other court to review their action."

General superintending control over "inferior courts" possessed by the district and supreme courts in this territory does not extend to the judicial action of the legislative houses in the case where it has been deemed necessary to confer such powers upon them with a view to enable them to perfect their organization and perform their legislative duties. It may, however, be said that no such judicial power has been delegated by congress to the territorial legislature in express terms, as is done usually by the constitutions of the states, and that, therefore, the rules of decision in the states do not apply here. Section 7 of the organic act of this territory is as follows: "That the legislative power of the territory shall extend to all rightful subjects of legislation, consistent with the constitution of the United States and the provisions of this act. But no law shall be passed interfering with the primary disposal of the soil. No tax shall be imposed upon the property of the United States, nor shall the lands or other property of nonresidents be taxed higher than the lands or other property of residents. All the laws passed by the legislative assembly and governor shall be submitted to the congress of the United States, and, if disapproved, shall be null and of no effect."

Whether in these general terms it was intended by

congress to confer legislative powers upon the legislative assembly of New Mexico, with the usual and ordinary incidental judicial power to determine finally the election, qualification, and return of the members, we do not decide.    It is sufficient to say that by the very terms of the organic act above quoted "all of the laws passed by the legislative assembly and governor shall be submitted to the congress of the United States, and, if disapproved, shall be null and of no effect."    We VALIDITY of session acts of 1884.  must presume that in obedience to the fundamental law of the territory these acts, together with all others passed at the session of 1884, were submitted to congress; and, there being nothing to show that they were disapproved, they have received the passive assent of congress, and have been in that way approved.    Congress has plenary power over the subject, and, being approved by it, there is nothing upon which to ground the jurisdiction of the courts over the subject sought to be reviewed.

LONG, C. J., and REEVES, J., concur.