PACIFIC ROLLING MILLS CO. v. JAMES STREET CONST. CO.

(Circuit Court of Appeals, Ninth Circuit. June 24, 1895.)

No. 208.

1. MECHANICS' LIENS — WASHINGTON STATUTE — RAILROAD STRUCTURE IN STREETS.

The lien law of Washington (1 Hill's Ann. Code, § 1663) provides that every person performing labor or furnishing materials for the construction of any building, railroad, or other structure has a lien upon the same for such labor or materials, and (section 1665) that the land upon which any building, improvement, or structure is constructed, or the interest therein of the person who caused such building, etc., to be constructed, shall be subject to the lien. *Held,* following the decisions of the supreme court of Washington, that a material man who furnishes materials for the construction of a street railway can obtain no lien upon the structure in the streets of a city.

2. SAME—POWER HOUSE OF CABLE ROAD.

*Held,* further, that a material man who furnishes materials for the construction of the tracks and conduit of such railway, operated by cable, can obtain no lien upon the power house from which the cable is operated, and the land on which it stands, though owned by the railway company and essential to the operation of the road, none of the materials furnished having been used in the building or upon the land.

3. SAME—WHO ARE MATERIAL MEN.

Plaintiff sold certain materials for the construction of a street railway to one H., and accepted his note in part payment therefor, knowing at the

time that the materials were to be used in the construction of defendant's railway, and that H. had a contract with defendant, made through one of its directors, who also participated in the negotiations with plaintiff, for the sale to defendant of the materials so purchased from plaintiff. *Held,* that plaintiff was not entitled to a lien for such materials upon defendant's property.

Appeal from the Circuit Court of the United States for the Northern Division of the District of Washington.

This was a suit by the Pacific Rolling Mills Company against the James Street Construction Company to foreclose a mechanic's lien. The circuit court dismissed the bill. 61 Fed. 476. Complainant appeals. Affirmed.

T. Z. Blakeman, for appellant.

Lorenzo S. B. Sawyer, for appellee.

Before McKENNA and GILBERT, Circuit Judges, and KNOWLES, District Judge.

GILBERT, Circuit Judge. The Pacific Rolling Mills Company brought a suit to foreclose a mechanic's lien for a balance of $6,731.22 against the street cable railway and power house of the James Street Construction Company, of Seattle, and the lots on which the power house was erected. The lien so claimed is for materials furnished for and used in the construction of the street cable railway, and it consisted of rails, slot steel, bolts, plates, and shims. All the materials so furnished and used went to the construction of the cable railway in the streets, and none thereof was used in the improvement upon the lots where the power house was erected. The negotiations for the sale of the materials were opened by one C. L. Hamilton, of Seattle, who first telegraphed to the complainant for prices. He thereafter telegraphed again, instructing the complainant to send its answer to J. D. Lowman, of Seattle. The complainant wired its terms to Lowman. Negotiations were continued until they resulted in a sale of the materials from the complainant to C. L. Hamilton for a purchase price of about $13,000. Lowman was a director and was the manager of the defendant. That fact was known to the complainant, and was referred to in the correspondence. The complainant also knew that the materials were to be used in the construction of the defendant's cable railway. It also appeared in one of Lowman's dispatches to the complainant before the sale that he used these words: "Before contracting with Hamilton I had him wire you requesting answer to me to know if you would fill his orders. Receiving affirmative reply, I contracted same day with him, rail at fifty-five twenty-three," etc. When the material was shipped by the complainant, it was consigned to Lowman, at Seattle, by Hamilton's direction. The shipping receipts, with a draft attached for one-half the purchase price, to wit, $6,485.31, were mailed to the Puget Sound National Bank, at Seattle, with instructions to collect the draft on delivery of the receipts, and to take Hamilton's note at 60 days for the other half of the purchase price. The material arrived at Seattle on August 25, 1890. Lowman and Hamilton called at the bank to get the draft and the shipping receipts. It was after banking hours, and the cashier declined to de-

liver the same. Later, on the same day, Lowman called at the bank, and stated that it was a strange proceeding for Hamilton to receive the bill of lading and give his note. To this the cashier agreed, and thereupon he telegraphed to the complainant's bank in California for information and instructions. On August 26th Lowman telegraphed to the complainant, saying: "Hamilton says you have taken his note and released iron; wants me to pay him. Shall I do so?" During the same day, and before receiving an answer to this telegram, which did not arrive until the 27th, Lowman and Hamilton went to the bank. In the meantime the bank had received an answer from the complainant's bank in San Francisco, as follows: "Our collection Hamilton of the 19th, $12,970, accept one-half cash, note balance in sixty days." Lowman and Hamilton were thereupon informed by the cashier of the Seattle bank that such were the terms on which the shipping receipts were sent. Accordingly, the shipping receipts were delivered to Lowman upon the payment of the draft by Hamilton and the execution of Hamilton's note for the other half of the purchase price. At the same time, Lowman paid Hamilton $8,-074.85 in cash and delivered to him the note of the defendant for the remainder of the purchase price, which note was subsequently paid. On the 27th Lowman received the answer to his dispatch of the day before, informing him that in taking Hamilton's note for one-half the value of materials at 60 days the complainant did not relinquish its right to file a lien in case of nonpayment of the note. On the trial in the circuit court, it was held that the complainant had no lien upon any of the defendant's property, and the bill was dismissed.

·On the appeal to this court, the question principally discussed is whether or not the law of the state of Washington gives to the complainant a lien which may be enforced, either against the railway or against the lots upon which the power house stands, or against both. The lien law of Washington (1 Hill's Ann. Code, § 1663) provides as follows:

"Every person performing labor upon, or furnishing materials to be used in the construction, alteration, or repair of any mining claim, building, wharf, bridge, ditch, dike, flume, tunnel, fence, machinery, railroad, wagon-road, aqueduct to create hydraulic power, or any other structure, or who performs labor in any mine or mining claim, has a lien upon the same for the work or labor done, or materials furnished by each, respectively, (whether done or furnished at the instance of the owner of the building or other improvement, or his agent), and every contractor, sub-contractor, architect, builder, or person having charge of the construction, alteration or repair either in whole or in part, of any building or other improvement, as aforesaid, shall be held to be the agent of the owner for the purposes of this chapter."

It was held in Kellogg v. Littell, 1 Wash. St. 408, 25 Pac. 461, that there can be no lien upon a building separate from the land whereon the same is situate; and in Railroad Co. v. Johnson, 2 Wash. St. 113, 25 Pac. 1084, it was held that unless there can be a lien upon the land there can be none upon the structure, and that no lien is given under the lien law for materials which enter into the construction of a cable railway, since the person or company constructing the same has no interest in the land; but the fee thereof is vested in the city for the public use, the railway company having only the

easement of use and a license to occupy and a franchise to collect fares; and it was further held that a street cable railway is not a railroad, and is not within the purview of the lien law.     The decision of the highest court of a state in regard to the meaning of the statutes of that state is to be considered the law of that state, under the requirement of section 721 of the Revised Statutes.     Leffingwell v. Warren, 2 Black, 599; Luther v. Borden, 7 How. 40; Post v. Supervisors, 105 U. S. 667; Bucher v. Railroad Co., 125 U. S. 555, 8 Sup. Ct. 974.     It is contended by the appellant that the construction so given to the law of Washington by the supreme court of that state is not conclusive upon this court; that a decision so made in February, 1891, does not control the decision of rights which accrued in the preceding year; and it is said that federal courts will not give a retroactive effect to the construction of state statutes adopted by the state courts.     It is true that in certain cases the federal courts have declined to give to the decisions of the state courts a retroactive effect; but, in order that a decision may be subject to objection because retroactive, there must have been a prior ruling of the state court holding the reverse of the later construction, under which former ruling, and upon the theory that the decision of the court has the same effect as statute law, rights shall have become vested.     It is held, indeed, that, where the state courts have in one line of decisions given a construction to state laws and have subsequently overruled such decisions, and adopted a different construction, the federal courts will not adopt the new interpretation so as to affect rights that accrued before it became announced as the law of the state courts.     Douglass v. County of Pike, 101 U. S. 686; Carroll County v. Smith, 111 U. S. 562, 4 Sup. Ct. 539.     But in the state of Washington there have been no conflicting decisions upon the construction of the words of the lien law which are involved in this case.     The cases cited from the decisions of that state do not overrule prior decisions of the same court.     They contain only the court's opinion of the meaning of the law from the time the statute was promulgated.     Their effect is to declare that the meaning therein given to the lien law was its meaning at the time of its enactment and at all times since.     The federal court, in following that construction, as it is bound to do, does not give a retroactive effect to the construction given by the supreme court of Washington, but it adopts the meaning of the law as the same has been declared by the state court.     Said the court, in Leffingwell v. Warren, supra:

"The construction given to a statute of a state by the highest tribunal of such state is regarded as a part of the statute, and is as binding upon the courts of the United States as the text."

Under the lien law of Washington, therefore, as expounded by the courts of that state, a material man who furnishes material for the construction of a street railway can obtain no lien upon the structure in the streets of a city.

A question of more difficulty concerns the further contention of the appellant that the defendant's power house and the lots whereon the same is constructed, and which are used in connection with the cable road, are subject to the lien.     It is argued that the case of

Railroad Co. v. Johnson is not decisive of this question; that, although it was said in the opinion in that case that a street cable railway is not a railroad, and is not within the description of the structures for which a lien is provided, it does not necessarily appear that such was the view of the majority of the court, since but three of the five judges who composed the court concurred in the decision, and the assent of one of those so concurring was expressly limited to the conclusion arrived at, which was that no lien was given upon a street cable railway in the streets of a city. It is admitted that none of the material furnished by the lienor in this case has been used in the improvements upon that portion of the property of which the title is vested in the defendant in fee; but it is said that the road and the power house are one, and indissolubly connected; that the cable railway is incapable of operation except in connection with the power house wherein the cable is operated, and whereby all the movement of cars is accomplished; that the road without the power house, and the power house without the road, are equally impotent to accomplish results; and that, notwithstanding the fact that the appellant has furnished no material for the power house, it has a lien thereon from the fact that it has furnished material for the railway track, which is so intimately and necessarily connected therewith. Upon careful consideration of this question, and the language of the law applicable thereto, we are inclined to the view that, if the lien is denied upon the road whereon the material was used, for the reason, as held by the state authorities, that the railway company has no interest in the road sufficient to sustain such a lien, it is also true that no lien attaches to property upon which none of the materials have been placed, and which, although it is used in connection with the road, and as a part of the system thereof, rests upon a title entirely distinct from that whereon the road rests. Section 1665 provides that the land upon which any building, improvement, or structure is constructed shall be subject to the lien if the same belonged to the person who caused the building, improvement, or structure to be constructed, altered, or repaired, but that, if he owned less than a fee simple estate in such land, then only his interest therein is subject to such lien. The lots owned by the defendant are not the land upon which the improvement was constructed with the plaintiff's material. That improvement is in the public streets. In a certain sense it is true that the cable road in the street and the power house on the lots are so intimately connected that the one may be said to be appurtenant to the other. But by the terms of the statute no reference is made to appurtenances, and no lien is expressly created therefor, and there is nothing in its provisions, or in the interpretation given thereto by the state courts, to justify the court now in holding that it contemplates a lien upon a building, or upon the lot on which it stands, for materials furnished in the construction of appurtenances not included in the contract for the construction of the building, nor situate upon land in which the owner of the building has an interest. The cases relied upon by the appellant's counsel come short of sustaining the doctrine on which his contention rests. In Beatty

v. Parker, 141 Mass. 526, 6 N. E. 754, a drain pipe, extending from the cellar of a house through the cellar wall and the yard and the street into a sewer, the construction of which was included in the contract for building the house, was held to be a part of the house, and it was held that a lien is provided therefor under the lien law, and that it was immaterial that the title to the street is not in the owner of the house. But the decision was based upon the fact that a portion of the drain pipe was in, and was a part of, the house on which the lien was attempted to be enforced, and was included in the contract for its construction. In this respect the facts differ materially from those in the case at bar. In Badger Lumber Co. v. Marion Water, etc., Co., 48 Kan. 182, 29 Pac. 476, it was shown that the defendant company owned land on which was a building and machinery for generating electricity to be used in connection with its electric wires and poles, which it had placed through the streets under a franchise therefor. The plaintiff furnished poles to support the wires in the streets. It was held that he had a lien on the lots on which the building and machinery were situated, but it was so expressly decided under the language of the Kansas statute, which provided liens for materials furnished to "any building, or to the appurtenance of any building"; and it was found by the court that the wires and poles were appurtenances to the building. But in Parmelee v. Hambleton, 19 Ill. 614, in a case where a house and a vault under the sidewalk of a street were constructed under a single contract, it was held that the vault, although an appurtenance to the house, was not subject to a mechanic's lien under a statute which conferred a lien upon any one who, under a contract with the owner of a lot, should furnish "labor or materials for erecting or repairing any building or the appurtenances of any building on such land or lot." The court said: "This certainly means that both the building and appurtenance shall be upon the lot."

Nor do we think that the relation of Hamilton to the defendant was such that, under any view of the meaning of the lien law, a lien could be created in favor of the vendor of materials sold in the manner indicated in the record in this case. If we concede that Lowman was acting on behalf of the defendant, and that the defendant, through his agency, was to all intents the purchaser from Hamilton, still it cannot be said that the complainant, in selling the goods to Hamilton, and in looking to him for the payment of the same, sold the same "at the instance of the owner," within the meaning of those words as they were used in the statute. They sold rather at the instance of Hamilton. Nor was Hamilton a "contractor," such as is contemplated in the statute. It is true he had a contract with Lowman, but it was only a contract of sale and delivery. It involved no labor or supervision upon Hamilton's part. While the latter might have claimed a lien for his own benefit, because standing in the attitude of a vendor to the owner of the road, his own vendor, the complainant in this case, furnished the materials neither to the owner nor to the owner's agent, nor to a contractor in charge of the construction of any part of the improvement. Hamilton was in charge of nothing connected with the construction. The correspond-

ence so advised the complainant. The statute does not contemplate a lien in favor of him who sells materials to one who in turn sells the same to the owner or his agent. It gives the lien only to him who deals with the owner or his agent, or with a contractor in charge, or with some other person in charge of some part of the improvement for which the materials are to be used. The decree is accordingly affirmed, with costs to the appellee.