BOARD OF COM'RS OF HERTFORD COUNTY, N. C., v. TOME et al.

(Circuit Court of Appeals, Fourth Circuit. April 9, 1907.)

No. 683.

1. JUDGMENT—CONSTRUCTION—ENFORCEMENT.

Where judgments rendered on certain railroad aid bonds issued by a township contained orders making it the duty of the county commissioners of the county in which the township was located to annually levy a necessary tax to make the annual interest payments on the bonds, but

such judgments did not direct the clerk to thereafter issue writs of mandamus if defaults should occur in the levy of the tax, they did not contain process within themselves for their own enforcement, so that, on the board's default, it was necessary for the owner of the judgments to obtain orders of the court to compel performance.

2. SAME—ESTOPPEL.

Where judgments on certain township railroad aid bonds had become dormant by the lapse of three years, without process to enforce the same, and therefore required an order of court entered on notice to revive the judgments and authorize enforcement by mandamus, as provided by Revisal, N. C. 1905, § 620, the defendants on such an application were not estopped by the judgments to question the validity of the act under which the bonds were issued.

3. COURTS—FEDERAL COURTS—FOLLOWING STATE DECISION—OBLIGATION OF CONTRACT—IMPAIRMENT.

Where certain township railroad aid bonds were issued under a state statute, and passed into the hands of non-resident holders for value at a time when the highest court of the state had rendered no decision intimating that a provision of the Constitution of the state would be subsequently so construed as to invalidate the bond act, the federal courts sitting within such state were not bound by such a decision holding that the bond act was illegally passed, the effect of which was to impair the obligation of the contract existing between the township and the bondholders.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 13, Courts, §§ 950, 957.

Conclusiveness of judgment between federal and state courts, see note to Kansas City, Ft. S. & M. R. Co. v. Morgan, 21 C. C. A. 478; Union & Planters' Bank of Memphis v. City of Memphis, 49 C. C. A. 468.]

In Error to the Circuit Court of the United States for the Eastern District of North Carolina, at Raleigh.

James H. Shepherd (Shepherd & Shepherd and Winborne & Lawrence, on the brief), for plaintiff in error.

F. H. Busbee (F. H. Busbee & Son, R. T. Gray, P. E. Tome, and E. J. Best, on the briefs), for defendants in error.

Before GOFF, Circuit Judge, and BRAWLEY and McDOWELL, District Judges.

McDOWELL, District Judge. By act of the Legislature of North Carolina (chapter 365, p. 640, Acts 1887) the Murfreesboro Railroad Company was incorporated and Murfreesboro township of Hertford county, which was by section 30 of the act created a "body politic and corporate" (the county commissioners being by said section made the corporate agents of the township), was authorized to subscribe to the stock of the said railroad company and to issue bonds in the payment of the subscription. This statute, so far as. is now material, does not differ essentially from the statute under consideration by this court in Board of Com'rs v. Tollman, 145 Fed. 753, 76 C. C. A. 317. An election was held under the act of 1887, and the subscription was authorized. In 1888 the bonds, which are dated September 19, 1887, were issued to the railroad company. The bonds are each for $1,000, numbered consecutively from 1 to 25. The first bond is made to become due ten years after February 1, 1888, and each successive bond one year later. On each bond were coupons, for $60 each, payable annually.

On August 5, 1891, Jacob Tome became the purchaser of all the bonds and of all the coupons not then due. The coupons falling due February 1, 1892 and 1893, were not paid. In November, 1893, the said Tome instituted an action in the United States Circuit Court for the Eastern District of North Carolina. To this action the only defendant named is the township of Murfreesboro. The relief sought was judgment that the plaintiff recover of the township the amount of the said coupons with interest and costs, and that the board of commissioners of Hertford county be required by mandamus to levy taxes and pay the said coupons, and also to thereafter annually levy such taxes and pay the coupons subsequently to become due. On May 3, 1894, the township appeared by counsel and answered the complaint. On November 29, 1895, the township filed a second answer, in which the defendant pleaded the fact that by chapter 23, p. 31, Private Acts 1895, the Legislature of North Carolina had "abolished the charter of the defendant." Somewhat later the complainant appears to have filed an amended complaint, which does not appear in the record, making the board of commissioners of Hertford county also a defendant. An answer to this amended complaint was filed December 18, 1896. It should here be stated that the act of 1895 referred to repealed the essential sections of chapter 365, p. 640, Acts 1887—including section 30, which made the board of commissioners the corporate agents of the township. The result of this action was a judgment in 1897 in accordance with the prayer of the original complaint. In 1898 the executors, under the will of said Jacob Tome, instituted another action in the said court on account of the subsequent default in payment of coupons, in which the township and the board of commissioners and the individuals constituting such board were made the parties defendant. On this complaint an order similar to the one above mentioned was made December 21, 1898. Commencing in 1898, and continuing until late in 1902, some considerable payments were made on the coupons. On December 20, 1902, the opinion of the Supreme Court of North Carolina in Debnam v. Chitty, 131 N. C. 657, 43 S. E. 3, was announced. In this opinion chapter 365, p. 640, Acts 1887, was held to have been invalidly enacted. Since the publication of that opinion the executors appear to have been unable to obtain further payments on their coupons. In May, 1905, the affidavit of one of the said executors setting out the fact that the two former judgments had been rendered, and that the then overdue coupons had not been fully paid, was filed in the aforesaid trial court. Thereupon the said court issued a rule to show cause why a peremptory writ of mandamus should not issue. The said affidavit and the said rule are both entitled, "Executors of Jacob Tome, Dec'd, v. Murfreesboro Township." The rule appears to have been served only upon the board of commissioners. An answer was filed to the rule on June 5, 1905, by the board of commissioners "appearing specially." The lower court on January 10, 1906, entered an order reviving the above-mentioned judgments of 1897 and 1898, and ordering the issue of a writ of peremptory mandamus directed to the board of commissioners, and in other respects following the judgments and

orders previously made by said court. The mandamus ordered by the judgment of January 10, 1906, was issued May 7, 1906. Thereafter an assignment of errors was filed in behalf of the township, a bill of exceptions was settled and signed, and a writ of error was allowed. On November 21, 1906, the Supreme Court of North Carolina handed down its opinion in Board v. Wachovia Loan & Trust Co., 55 S. E. 442, in which the ruling in Debnam v. Chitty, supra, in regard to the validity of the statute there in question, is expressly repudiated. This fact was not known at the time this case was argued here.

The first matter to which our attention is required arises from the contention that the judgments of 1897 and 1898 estop the plaintiff in error from raising any question as to the validity of the act of 1887, under which the bonds here involved were issued. We are unable to perceive that these judgments "contain process within themselves," or that any reason exists which discriminates the case at bar in this respect from Brownsville v. Loague, 129 U. S. 493, 9 Sup. Ct. 327, 32 L. Ed. 780. The judgments did not direct the clerk of the trial court to thereafter issue writs of mandamus if defaults in the annual payments of the coupons should occur. Clearly for a failure or refusal of the board to levy a tax in 1900, for instance, the coupon holder had to have an order of some description from the court to obtain relief. Although the judgments of 1897 and 1898 contained orders making it the duty of the board to annually levy the necessary tax, yet, on a subsequent failure of the board to obey such orders, some action by the court was necessary to enforce compliance with the previous orders. Whether the necessary action might be process for contempt or another writ of mandamus is immaterial. The fact remains that the judgments are not of themselves sufficient.

Section 620, Revisal 1905 (of the North Carolina laws), reads:

"After the lapse of three years from the entry of judgment on the judgment docket, an execution can be issued only by leave of the court, upon motion, with personal notice to the adverse party, unless he be absent or nonresident, or can not be found to make such service, in which case such service may be made by publication, or in such other manner as the court shall direct. Such leave shall not be given unless it be established by the oath of the party, or by other satisfactory proof, that the judgment, or some part thereof, remains unsatisfied and due. But the leave shall not be necessary when execution has been issued on the judgment within the three years next preceding the suing for execution, and return thereof unsatisfied in whole or in part."

The last of the two judgments mentioned was rendered December 21, 1898. The affidavit on which was commenced the proceeding now under review was filed more than three years later. By force of the statute above quoted the judgments sought to be revived were dormant. The writ of mandamus applied for in 1905 is essentially, in the case at bar, a process in the nature of an execution. The statute in question is in effect a statute of limitation, and the trial court was bound by it. Ross v. Duval, 13 Pet. 45, 48, et seq., 10 L. Ed. 51. In other words, the plaintiffs below had to take the steps they did take. They necessarily filed the affidavit, had notice given the judgment debtor, and moved the court to revive the dormant judgments and issue, in essence and effect, process of execution, not contained in the judgments

of 1887 and 1898. The decision in Brownsville v. Loague, supra, controls us. The result is that the plaintiff in error was not and is not estopped by the judgments of 1897 and 1898 to question the validity of the act of 1887.

Still another reason exists for holding that the board of commissioners, in behalf of the taxpayers of the township, were and are at liberty to assail the validity of the act of 1887. As has been stated, the Legislature in 1895 annulled the powers of the board to act as the agents of the township. The service of the rule to show cause in 1905 was made only on the chairman of the board. While we doubt the strict legality of this service of process (Revisal 1905, § 440; 1 Code 1883, p. 81, § 217), we shall not pause to discuss this question. The only service of process and the only appearance, that being special, was on and by the board. If the repealing act of 1895 was a valid exercise of a power vested in the Legislature, the township has suffered a judgment without due process of law, and without having had its day in court. It is said, of course, that the act of 1895 is invalid because it impaired the obligation of a contract. But we cannot so decide unless and until we decide that the act of 1887 was validly enacted, for otherwise there was no valid contract which was impaired by the act of 1895.

We must next consider the effect we should give to the recent decision of the Supreme Court of North Carolina in the case of Board v. Wachovia Co., supra. It may be that this court, notwithstanding the Wachovia opinion, is constrained to discuss and independently decide the validity of chapter 365, Acts 1887. But, without expressing an opinion on this question, we think reasons exist making it improper to avoid the discussion which follows. Very frequently it is proper for a court to avoid expressing an opinion on a question not necessarily involved in disposing of the case before the court. And in the case at bar it may be thought that this court could most properly dispose of this case by merely affirming the trial court's ruling with a citation to the Wachovia Case. Such course would leave open a question of grave importance to many litigants and members of the bar in North Carolina. Does this court affirm merely because the view expressed by the North Carolina court coincides with our own view reached independently, or because we consider that this court is bound by the construction put by the North Carolina court on the constitutional provision as to the method of enacting taxing statutes?

Without saying that this court must in all cases relieve litigants and counsel of such embarrassment, we think that there is a reason in this particular case which would render it improper to fail to express and to discuss the reason why we affirm the judgment of the trial court. This reason is as follows: In the case of Tollman v. Board, 145 Fed. 753, 763, 764, 76 C. C. A. 317 (owing chiefly to the fact that certain language, to be hereinafter quoted, used in the opinion in Great Southern Hotel Co. v. Jones, 193 U. S. 546, 24 Sup. Ct. 5, 76, 48 L. Ed. 778, escaped the attention of the writer), we apparently showed less than the respect we feel for the opinion of one of the learned members of the Supreme Court of the United States. A question of great importance was in the Tollman opinion passed over without any consider-

able discussion, and, for reasons which will hereinafter appear, this omission may create a false impression. The respect we entertain for the learned Justice in question impels us to now state fully the reasons which led us to the conclusion reached in the Tollman Case, and which now lead us to affirm the judgment of the trial court in the case at bar.

As has already appeared, the Tollman Case presented a question identical with the question now before us. Unless that opinion is erroneous, we must in the case at bar affirm the judgment below, for we are unable to distinguish the two cases. The one point in which the cases differ is this: In the Tollman Case the alleged invalidity of the statute under which the bonds were issued was attacked under the principle laid down in the case of Debnam v. Chitty, supra. Here the attack is based on the fact that in Debnam v. Chitty the Supreme Court of North Carolina held the particular statute under which the bonds involved were issued not to have been enacted as is required by article 2 section 14 of the Constitution of North Carolina. The nature of the supposed defect will appear from either the opinion in the Tollman Case or in Debnam v. Chitty.

No reason suggests itself to us why the difference mentioned should discriminate the two cases. If the ruling of this court in the Tollman Case was sound, we are unable to perceive why the principle there invoked does not apply here. The bonds here involved were issued in 1888, the decision in Debnam v. Chitty was rendered in 1902. Prior to 1899 (Smathers v. Com'rs, 125 N. C. 480, 34 S. E. 554), so far as we have discovered, there had been no opinion of the Supreme Court of North Carolina which so much as intimated that the Constitution would ever receive the construction subsequently put upon it in Debnam v. Chitty. If the doctrine laid down in the long line of cases preceding and following Burgess v. Seligman, 107 U. S. 20, 2 Sup. Ct. 10, 27 L. Ed. 359, is correctly understood, such doctrine applies here as clearly as in a case where the erroneous state ruling is made concerning some other statute. That there is no peculiar effect to be given to a state court's decision concerning the particular statute which happens to be invoked in the federal court seems to us to necessarily follow from Carroll County v. Smith, 111 U. S. 556, 4 Sup. Ct. 539, 28 L. Ed. 517; Folsom v. Ninety-Six, 159 U. S. 611, 16 Sup. Ct. 174, 40 L. Ed. 278; Stanley County v. Coler, 190 U. S. 437, 23 Sup. Ct. 811, 47 L. Ed. 1126; Great Southern Hotel Co. v. Jones, 193 U. S. 532, 24 Sup. Ct. 576, 48 L. Ed. 778.

However, the chief argument made in behalf of plaintiff in error is based on this proposition: A decision by a state court of last resort to the effect that a legislative act was not validly enacted is binding in the federal court; although such decision is regarded by the federal court as an erroneous construction of the state Constitution; although such decision was rendered after rights based on the validity of such legislative enactment had accrued; and although such decision had not been foreshadowed or indicated by any previous decision of the state court antedating the accrual of such rights, if there had been no previous state court decision holding or indicating that the legislative act was a validly enacted law.

In the opinion of Mr. Justice Harlan in Wilkes County v. Coler, 180 U. S. 506, 519, 21 Sup. Ct. 458, 463, 45 L. Ed. 642, the following language is used:

"Observe that the issue is not as to the construction, meaning or scope of a statute, but whether that which purports to be a legislative enactment ever became a law for any purpose."

In the opinion, written by the same learned member of the court, in Great Southern Hotel Co. v. Jones, 193 U. S. 532, 546, 24 Sup. Ct. 576, 579, 48 L. Ed. 778, the following language is used:

"The only exception to the general rule announced in the above cases [Carroll County v. Smith, 111 U. S. 556, 4 Sup. Ct. 539, 28 L. Ed. 517; Anderson v. Santa Anna, 116 U. S. 356, 365, 6 Sup. Ct. 413, 29 L. Ed. 633; Pleasant Township v. Ætna Co., 138 U. S. 67, 72, 11 Sup. Ct. 215, 34 L. Ed. 864; Folsom v. Ninety-Six, 159 U. S. 611, 627, 16 Sup. Ct. 174, 40 L. Ed. 278; Barnum v. Okolona, 148 U. S. 393, 13 Sup. Ct. 638, 37 L. Ed. 495] arises when the question is whether a particular statute was passed by the legislature in the manner prescribed by the state constitution so as to become a law of the state. Town of South Ottawa v. Perkins, 94 U. S. 260, 24 L. Ed. 154; Post v. Supervisors, 105 U. S. 667, 26 L. Ed. 1204; Wilkes County v. Coler, 180 U. S. 506, 520, 21 Sup. Ct. 458, 45 L. Ed. 642."

The question now presented is whether or not the expressions above quoted should be regarded by us as a binding opinion enunciating a doctrine of law, or as obiter dicta. Perhaps no rule is better settled, or more frequently inculcated by the Supreme Court, than that expressions found in opinions of courts which relate to a doctrine of law not necessarily in issue in the case then before the court are not to be regarded as deliberate and binding enunciations of such doctrines. Carroll v. Carroll's Lessee, 16 How. 275, 287, 14 L. Ed. 936. It is probable that there is no volume of the Supreme Court Reports in which the idea is not advanced that expressions of opinion not necessary to the determination of the case are to be regarded as dicta. We think it safe to say that every judge in writing opinions occasionally uses expressions which relate to points not necessarily in issue, and which do not represent either his own or his associates' studied and deliberate views. We feel, therefore, constrained to consider, first, if the expressions above quoted state views that are binding upon this court, and, if not, if they be such as we should follow.

In Wilkes County v. Coler, 180 U. S. 506, 21 Sup. Ct. 458, 45 L. Ed. 643, the Supreme Court had under consideration article 2, § 14, of the North Carolina Constitution, which forbids the enactment of a law allowing a county to impose a tax unless, inter alia, the yeas and nays on the second and third readings are entered in the journals. The opinion (page 513 of 180 U. S., page 460 of 21 Sup. Ct. [45 L. Ed. 642]) states that the journals of the two houses were put in evidence, and that it did not appear therefrom that the yeas and nays on the second and third readings of the Acts of 1868, 1879, and 1881, respectively, were entered on the legislative journals. It follows therefore, as an independent proposition, that these acts were not validly enacted. In other words, the state court rulings, subsequent to the issue of the bonds, holding these statutes to have been invalidly enacted, were necessarily considered by the United States Supreme Court proper constructions of the constitutional provision. Again, in the

opinion it is stated that the decision of the Supreme Court of North Carolina in State v. Patterson, 98 N. C. 660, 4 S. E. 350, was rendered before the issue of the bonds in question, and it is said:

"After the decision in State v. Patterson * * * it might have been anticipated that the same court would hold as they did in the subsequent cases above cited that the entering of the yea and nay vote on the second and third readings of an act of the class mentioned in section 14 of article 2 of the state Constitution was a condition precedent that could not be dispensed with under any circumstances."

It seems beyond question, therefore, that the decision of the case before the court did not necessarily involve a distinction between state court rulings, which hold legislative acts to have been invalidly enacted, and state court rulings which hold state statutes to be void for some other supposed constitutional defect. The facts in the case brought it directly under the principle enunciated in many previous opinions, and did not raise a question as to the effect of state court rulings, holding a statute to have been invalidly enacted, made after the accrual of rights, not foreshadowed by state court rulings previously made, and repugnant to the construction which the federal court would independently put on the constitutional provision in question.

Although the language hereinabove quoted from Wilkes County v. Coler, supra, may be deemed an unmistakable enunciation of an opinion, yet, as it was used in regard to a feature of that case not necessarily in issue, most assuredly it could not properly be relied upon as a binding enunciation in such a case as Board v. Tollman, supra. The state court ruling, as to the validity of the enactment of the statute (Debnam v. Chitty), came after the accrual of rights, was not indicated by any ruling previous to the accrual of such rights, and is repugnant to our own construction of the constitutional provision. In Great Southern Hotel Co. v. Jones, 193 U. S. 532, 24 Sup. Ct. 576, 48 L. Ed. 778, there was nothing in issue relating in the remotest degree to the manner of the enactment of the statute. Consequently the expression from that opinion quoted above could not have related to any point in issue there. With great deference, it seems to us to follow from what has been said that we must regard the expressions in question as dicta.

Let us now very briefly examine Ottawa v. Perkins, 94 U. S. 260, 24 L. Ed. 154, and Post v. Supervisors, 105 U. S. 667, 26 L. Ed. 1204. (1) In these cases the state court had, years before the issue of the bonds, unmistakably construed the state constitutional provision as it was construed by the state court decisions rendered after the issue of the bonds. (2) The great subject of debate and the point in the mind of the writer of the majority opinion in the Ottawa Case was the propriety of so applying the doctrine of estoppel as to prevent the defendant below from proving that the act of Legislature was not enacted in the manner required by the state Constitution. It seems to us to follow that there was nothing in that case to make it necessary to decide that a settled course of decision of the courts of a state, long antedating the accrual of rights, is more binding when relating to one provision of the state Constitution than

when relating to other provisions of such Constitution. It is true that the language in the Ottawa Case, at page 268, may be read as indicating a belief that such distinction exists. But Mr. Justice Bradley had no reason for drawing such distinction. He was arguing against an alleged estoppel, and everything said by him would have been equally appropriate had the invalidity of the statute there in question arisen from some constitutional defect other than the manner of its enactment. Of Post v. Supervisors, supra, little need be said. It relates to the statute discussed in the Ottawa Case, and arose under the same facts. In the summary of the rulings in the Ottawa Case, as stated in Post v. Supervisors, is the following:

"An act of the Legislature of a state, which has been held by its highest court not to be a statute of the state, because never passed as its Constitution requires, cannot be held by the courts of the United States, upon the same evidence, to be a law of the state."

If this language had been used in a case where the construction given the state Constitution by the state court had been regarded by the United States Supreme Court an erroneous and unwarranted perversion of the state Constitution, and if such construction had been announced (without previous intimation) after the accrual of rights, it would necessarily be decisive of the question we propose to discuss. But in the case then before the federal Supreme Court, the state constitutional provision had been construed by the state court before the issue of the bonds as it was construed after their issue. Hence we do not perceive the propriety of treating the language above quoted as necessarily applicable to the question we are concerned with.

Let us now consider the question on its merits. That the federal court must, in proper cases, construe state constitutional provisions independently will, of course, not be denied. In the opinion in Great Southern Co. v. Jones, 193 U. S. 544, 545, 24 Sup. Ct. 576, 48 L. Ed. 778, are cited numerous Supreme Court cases in which this proposition is stated, and in which it was necessary to decide that this rule is the correct one. As a matter of reason simply, we are unable to perceive the force of the distinction between an erroneous state court ruling that a statute is void because not enacted in the manner required by some provision of the state Constitution, and an erroneous state court ruling that a statute is void because it contravenes some provision of the state Constitution other than that relating to the mere manner of enacting statutes. We find it difficult to see why the clause in a state Constitution which specifies the method of enacting statutes should be given, in the federal courts at least, a more controlling force, or greater effect, than other provisions of the same Constitution. But, even if it be conceded that the manner of enacting statutes is of greater importance than the matter contained in statutes, we conceive that the relative importance of the two classes of constitutional provisions is not the criterion of the power, or of the duty, of the federal courts. The very foundation of the rule under which the federal courts independently construe the ordinary provisions of state Constitutions, and refuse to follow erroneous rulings of the state courts, as we understand it, is the justice and propriety of prevent-

ing the courts of a state from retroactively impairing the obligation of contracts. See Rowan v. Runnels, 5 How. 134, 139, 12 L. Ed. 85, in which the effect of a provision of the Constitution of Mississippi was under consideration, and in which Chief Justice Taney said:

"But we ought not to give them [state decisions] a retroactive effect, and allow them to render invalid contracts entered into with citizens of other states, which in the judgment of this court were lawfully made. If such rule were adopted and the comity due to state decisions pushed to this extent, it is evident that the provision in the Constitution of the United States, which secures to the citizens of another state the right to sue in the courts of the United States, might become useless and nugatory."

We can conceive of no difference in the effect of erroneous state court rulings in impairing the obligation of contracts, whether such ruling be that a statute was not properly enacted or that the statute is in some other respect violative of the state Constitution. If the rules of comity do not forbid the federal courts to repudiate the rulings of the state courts in the one class of cases, we cannot perceive why such rules should have such effect in the other class. If the purpose and intent of the provision in the federal Constitution, which gives to certain citizens of the United States the right to resort to the federal courts, was to furnish to such litigants a shield against sectional or local prejudice, it seems to follow that this purpose and intent must control as fully and as effectually in one class of cases as in the other. If the federal Constitution be supreme, we cannot conceive that an erroneous state court decision retroactively impairing rights can properly be allowed to override its intent, no matter what provision of a state Constitution is the subject of such decision.

We here quote in part some of the language, used in other opinions, which was quoted in the opinion in Great Southern Hotel v. Jones, supra:

From Carroll County v. Smith:

"In the courts of the United States * * * the plaintiff has a right, under the Constitution of the United States, to the independent judgment of those courts. * * * It was to that very end that the Constitution granted to citizens of one state, suing in another, the choice of resorting to a federal tribunal."

From Burgess v. Seligman:

"As, however, the very object of giving to the national courts jurisdiction to administer the laws of the states in controversies between citizens of different states was to institute independent tribunals which it might be supposed would be unaffected by local prejudices and sectional views, it would be a dereliction of their duty not to exercise an independent judgment in cases not foreclosed by previous adjudication."

In the Tollman Case the validity of the enactment of the statute in question had not been foreclosed by adjudication previous to the accrual of rights. And in that case this court did not desire to be guilty of a "dereliction of duty." As every reason which authorizes a federal court in any case to independently determine the constitutionality of a state statute existed in the Tollman Case, we conceive that there was there no escape from the duty of an independent examination and conclusion.

On the merits we do not regard it as necessary to add to what was

said in the Tollman Case. But it should be said that the opinion in Debnam v. Chitty, in the light of the recent opinion in the Wachovia Case, affords a striking illustration of how nearly nugatory the constitutional right of nonresidents to litigate in the federal courts might become, if any class of state court decisions must be given by the federal courts the effect of retroactively impairing contracts which in reality are valid. That the learned Supreme Court of North Carolina, as now constituted, concurs in the view expressed in the Tollman Case in respect to the proper construction of article 2, § 14, of the Constitution of North Carolina, is not only gratifying; but it in no small degree tends to fortify us in the position heretofore taken by this court.

It follows from what has been said that the judgment below must be affirmed. It also follows from what has been said that we affirm because in our judgment, independently exercised, we consider that the judgment below is free from error, and that it was free from error, actual or apparent, when rendered.

Affirmed.