## FOLSOM *v.* NINETY SIX.

CERTIFICATE FROM THE CIRCUIT COURT OF APPEALS FOR THE FOURTH CIRCUIT.

No. 854. Submitted December 3, 1894. — Decided November 18, 1895.

When a township has been created by law as a territorial division of a State, with no express grant of corporate powers, and with no definition or restriction of the purposes for which it is created, it is within the

power of the legislature, at any time, to declare it to be a corporation, and to confer upon it such corporate powers, appropriate to be vested in a territorial corporation for the benefit of its inhabitants, as the legislature may think fit.

Notwithstanding the decision of the Supreme Court of South Carolina in *Floyd* v. *Perrin*, 30 So. Car. 1, the statute of South Carolina of December 24, 1885, which authorized townships (already defined by names and boundaries) to subscribe for stock in a railroad company, and county officials to issue bonds accordingly in their behalf, and to assess and levy taxes upon the property in the township for the payment thereof, and declared the townships to be bodies politic and corporate for the purposes of this act, with the necessary powers to carry out its provisions, and with rights and liabilities in respect to any causes of action growing out of its provisions, must be held by the courts of the United States, as to bonds issued and purchased in good faith before that decision, to be consistent with art. 9, sect. 8, of the constitution of South Carolina, authorizing the corporate authorities of townships to be vested with power to assess and collect taxes " for corporate purposes."

THIS was an action, brought in the Circuit Court of the United States for the District of South Carolina, by George W. Folsom, against Township Ninety Six in the county of Abbeville and State of South Carolina, to recover the sum of $5100, the amount of coupons attached to bonds issued in behalf of that township in aid of the construction of a railroad; and to compel the levy of a tax upon the property in the township to pay these coupons. The complaint contained the following allegations:

That the plaintiff was a citizen of the State of Tennessee; that the defendant was a corporation, duly chartered under and by virtue of an act of the general assembly of South Carolina of December 23, 1882, chartering the railroad company by the name of the Greenville and Port Royal Railroad Company, and of an act of December 24, 1885, amending its charter, and changing its name to the Atlantic, Greenville and Western Railroad Company; and that the defendant was a citizen and resident of the State of South Carolina.

" That the said acts authorized and empowered the counties and townships, interested in the construction of said railroad, to subscribe to the capital stock thereof, and to issue bonds in aid thereof; and declared the boards of county commissioners of the several counties to be the corporate agents of the town-

ships within their limits of said counties, respectively; and authorized and empowered said boards, respectively, to execute and issue bonds of said townships in aid of said railroad; as will more fully appear by reference to said acts, which are by their terms declared to be public acts."

That Township Ninety Six lay in Abbeville County, in the State of South Carolina, along the line of said railroad; that, in pursuance of said acts, an election was duly held in the said township, and resulted in favor of a subscription to said railroad company to the amount of $20,800; and that, in pursuance of said acts, the board of county commissioners of Abbeville County, on March 25, 1886, duly executed and issued bonds of the township, numbered on their face, and aggregating $20,800, as authorized by those acts, with interest coupons attached at the yearly rate of seven per cent; the bonds and coupons payable at the First National Bank of Charleston, S. C.; and the bonds containing a recital that the township by virtue of those acts had subscribed for $20,800 of the common stock of the railroad company.

That the plaintiff, in 1886, relying upon the recitals contained in the bonds, and upon their being legal and valid obligations of the township, became the purchaser of certain of the bonds, with the coupons attached, and was now the legal owner and holder thereof.

"That at the time of the issue of said bonds, and of the purchase thereof by the plaintiff, the said bonds and coupons, and other bonds and coupons issued as obligations of other townships under said acts and similar acts enacted in 1872 and 1875, when the bonds were also issued, were regarded and treated as valid securities by the corporate authorities of said township, by the public, the legal profession, and by the legislative, executive and judicial departments of the State of South Carolina; and that they circulated freely in the market, and large sums of money were invested in them by citizens of South Carolina, as well as other States, believing them to be valid and valuable securities."

That by an act of the general assembly of South Carolina of December 19, 1887, the validity of the bonds issued under

the former acts was distinctly recognized, and provision was made for their payment in the same manner as provided for coupons by the act of 1885.

That the plaintiff was now the owner and holder of unpaid coupons to the amount of $5100 upon his bonds; and that the defendant had failed and refused to assess and collect taxes, or to place money in the First National Bank of Charleston, for the payment of these coupons.

The defendant demurred to the complaint. The Circuit Court held the questions raised to be controlled by the case of *Floyd* v. *Perrin*, 30 So. Car. 1, which the Circuit Court was bound to follow; and therefore sustained the demurrer, and dismissed the complaint. 59 Fed. Rep. 67.

The plaintiff took the case by writ of error to the Circuit Court of Appeals for the Fourth Circuit, which, desiring the instructions of this court upon certain questions or propositions of law, certified them to this court as follows:

"First. Whether, upon the averments of the complaint, the Circuit Court was bound, in passing upon this case, by the decision of the Supreme Court of South Carolina in *Floyd* v. *Perrin*, 30 S. C. 1?

"Second. Whether, if the bonds and coupons in question were issued, put in circulation, and came to the hands of plaintiff in error, in due course of trade, for valuable consideration and without notice, there having been at the time no decision of the Supreme Court of South Carolina adverse to these bonds, or identical bonds issued under similar statutes, the plaintiff in error was entitled to recover on the coupons mentioned in said complaint?

"Third. Whether the acts of December 23, 1882, and of December 24, 1885, were constitutional, and the township bonds issued thereunder, if in compliance with the acts, or in the hands of *bona fide* holders for value, constituted valid indebtedness of, the township issuing the same?

"Fourth. Whether the act of December 19, 1887, had the effect to validate the bonds and coupons in question, and make them binding upon the township of Ninety Six?"

*Mr. John K. Shields,* (with whom were *Mr. James T. Shields, Mr. H. J. Haynesworth,* and *Mr. L. W. Parker,*) submitted on his brief for plaintiff in error.

*Mr. W. C. Miller* submitted on his brief for defendant in error.

I. The bonds sued on in this case were declared, in *Floyd v. Perrin,* 30 So. Car. 1, to be void. The train of reasoning by which the court reached its conclusion in that case may be briefly stated thus:.

Section 8, Article IX, of the constitution of the State provides: "The corporate authorities of counties, townships, school districts, cities, towns and villages may be vested with power to assess and collect taxes for corporate purposes," etc.

Is Ninety Six township a corporation, and if so, are the corporate purposes of Ninety Six township of such a nature as will enable said township under the constitutional limitation, to assess and collect taxes in aid of a railroad?

At the time of the passage of the act creating the Greenville and Port Royal Railroad Company, and attempting to authorize the township subscriptions to its bonds, the township of Ninety Six did not exist in South Carolina as a corporate organization.

"It will be conceded," the court said, "that at the time of the passage of the act chartering the Greenville and Port Royal Railroad Company, Ninety Six township was not a corporate body. . . . It is true that under the act of the legislature passed in 1868, the counties of the State were divided into townships, which were declared to be corporate bodies, with corporate purposes, and to be organized with various officials, moderators, town clerks, selectmen, constables, etc., and with all the machinery of a regular corporation; but this act was repealed in 1870 by an 'Act to repeal an act entitled "an act to organize townships and to define their powers and privileges,"' excepting however that portion of said act fixing the number, names and boundaries of the respective townships in the respective counties, which were left as territorial divisions but with no corporate powers, privileges or purposes."

· Exception has been taken to the ruling of the Circuit Judge upon the ground "that the case of *Floyd* v. *Perrin* was not controlling because it is not a well settled decision of the said court, but is in effect overruled by the later cases of *State* v. *Whitesides*, 30 So. Car. 579, and *State* v. *Neely*, 30 So. Car. 587."

· *Floyd* v. *Perrin* is on the contrary followed and reaffirmed by the cases above mentioned as well as by others.

And in these cases the court held the act of 1888 to be constitutional, but not, however, as an act validating the act of 1885. On the contrary, it was held that the act of 1888 had no such effect and was not so intended. The court founded the constitutionality of the act upon the ground that while, under the constitutional limitations, the legislature could not authorize the levy of a tax by a township to meet a railroad subscription, which is not a *corporate* purpose so far as such township is concerned, the building of a railroad, which is regarded as an improved highway, is a public purpose from the standpoint of the State; and that for such purpose the legislature may not authorize the levy of a tax *by*, but directly impose a tax *upon*, the townships created under the act of 1885. And thus these cases also reaffirm the doctrine. of *Floyd* v. *Perrin*.

The question raised in these cases involves the meaning of "township," as used in the constitution of South Carolina, the corporate purpose of the township under that constitution, and the constitutional restrictions upon the power of the legislature of South Carolina to vest in such township the right of taxation.

The decisions of the state Supreme Court are not based upon general principles of law governing all commercial paper and applicable alike to all the States.

Admitting the existence in South Carolina of "townships" similarly constituted to municipal or political bodies of like name in other States, the power of subscription and taxation by such bodies might be determinable under the general law of the subject. But as will hereinafter appear, the pivotal inquiry is whether Ninety Six exists as a township within the

meaning of the state constitution. It is conceded to be a corporation, but is it 'a constitutional township? That question can be determined only by a construction of the constitution and statutes of South Carolina, and is therefore peculiar to that State. It exclusively relates " to the internal constitution of the body politic of the State of South Carolina."

It is submitted that these cases, giving a construction by the highest court of the State to its constitution, should be followed by this court. *Claiborne County* v. *Brooks*, 111 U. S. 400; *Norton* v. *Shelby County*, 118 U. S. 425; *Gormley* v. *Clark*, 134 U. S. 338; *Stutsman County* v. *Wallace*, 142 U. S. 293.

Insisting that there has been a recognition of township bonds as valid securities by the legislature, through the several acts permitting the issuing of such bonds in aid of railroads, and by the courts through the cases above cited, appellant claims to have brought his case within the exception stated in the case of *Pine Grove Township* v. *Talcott*, 19 Wall. 666, to the rule that the Federal courts upon a question of this character will follow the decisions of the state tribunals.

But the paramount controlling reason which induced the court to disregard the state decisions has already been assigned. It lay, not in the fact that the bonds had been recognized by the different departments of government, but that " the question before us belongs to the domain of general jurisprudence. In this class of cases this court is not bound by the judgment of the courts of the States where the cases arise. It must hear and determine for itself."

If, therefore, appellee is right in the postulate that the question at bar is one involving the constitution of South Carolina and relating to the internal policy of *that* State, this case, as stated in the complaint, is still within the rule established in *Claiborne County* v. *Brooks*, unaffected by the decision of *Pine Grove Township* v. *Talcott*.

It is also averred in the complaint that the plaintiff, for full value and without notice of any defect or irregularity therein, purchased his bonds in reliance upon their recitals, etc.

The doctrine of estoppel is not applicable here. The inva-

lidity of the bonds does not arise from any failure in the performance of conditions precedent, and it is not disputed that all such conditions were performed. The malady lies deeper than that, and is to be found in the organic existence of the township itself. That is to say, the unconstitutionality of the bonds has not been adjudged upon any question of fact, about which the plaintiff may have been ignorant, but it rests upon a matter of law which is presumed to have been known to the plaintiff and all others, namely, upon the legal question whether or not a subscription to aid in building a railroad was a corporate purpose so far as the township of Ninety Six was concerned.

This distinction has been clearly defined by this court. *Coloma* v. *Eaves*, 92 U. S. 484; *Dixon County* v. *Field*, 111 U. S. 83; *Lake County* v. *Graham*, 130 U. S. 674.

II. It has been earnestly contended by the appellant in the argument before the lower court that his bonds were purchased before the decision in *Floyd* v. *Perrin*, and that that decision will not control this court. In no case has this fact alone determined Federal courts in following or disregarding the decisions of state courts. Whenever the decisions of this court have been so affected, it has been because of other considerations which are absent in the case at bar, viz. : (1) That before the decision of the state court was announced the question had been submitted to the Federal tribunal, and was being considered on its merits; (2) That before the state court had spoken, this court had announced its own judgment; or (3) That prior to the purchase of the bonds, earlier decisions of the state court had upheld their validity. *Knox County* v. *Ninth National Bank*, 147 U. S. 91, citing *Cass County* v. *Johnston*, 95 U. S. 360; *Daviess County* v. *Huidekoper*, 98 U. S. 98; *Douglass* v. *Pike County*, 101 U. S. 677; *Carroll County* v. *Smith*, 111 U. S. 556.

III. It is submitted that the *corporation* known as the "Township of Ninety Six" is not a township within the meaning of the constitution of South Carolina, nor is it otherwise such a municipal or political division of the State as that under the constitution it may be vested with the power to tax.

IV. The act of December 19, 1887, does not cure the invalidity of appellant's bonds nor otherwise render them obligations of the township.

MR. JUSTICE GRAY, after stating the case, delivered the opinion of the court.

By the constitution of South Carolina of 1868, art. 9, sec. 8, "The corporate authorities of counties, townships, school districts, cities, towns and villages may be vested with power to assess and collect taxes for corporate purposes." 2 Charters and Constitutions, 1659.

The situation arising out of the subsequent acts of the legislature and decisions of the courts of the State, with regard to bonds like those now in question, will be best understood by stating these acts and decisions in chronological order.

By the act of September 26, 1868, entitled "An act to organize townships, and to define their powers and privileges," the inhabitants of every township were declared to be a body politic and corporate, with power to sue and be sued, to hold and convey real and personal estate, to make contracts, to hold meetings, to elect town officers, to vote money for schools, burial grounds, highways and bridges, and to lay taxes for the purpose of keeping highways and bridges in repair; the lines of the townships were to be perambulated, and the marks and bounds renewed, once in every seven years forever; and the act was to take effect, as to each township, on the completion of the duties assigned to county commissioners under §§ 11, 12, of another act of the same date, by which the county commissioners were directed to divide the counties into townships, to establish their boundaries, and to designate the name of each, and the time and place of holding its first meeting. 14 Statutes of South Carolina, pp. 128, 143–151.

By the act of January 19, 1870, the township act of 1868 was repealed, "except that portion of the same fixing the number, names and boundaries of the respective townships of the respective counties." 14 Statutes of South Carolina, p. 313.

The act of December 23, 1882, chartering the Greenville and Port Royal Railroad Company, as amended by the act of December 24, 1885, (both of which were declared to be public acts,) contained the following provisions :

"SECT. 6. That, in addition to the provisions contained in the preceding section for private subscription, it shall and may be lawful for any city, town, county or township, interested in the construction of said road, to subscribe to its capital stock such sum as a majority of their voters, voting at an election held for that purpose, may authorize the county commissioners or proper authorities of such city, town, county or township, to subscribe, which subscription shall be made in seven per cent coupon bonds, payable in such instalments as the county commissioners or proper authorities of such city, town, county or township may determine, and to be received by said company at par; said bonds to be made payable in sixteen, twenty, twenty-four and twenty-eight years after the date thereof, and to be of the denomination of one hundred dollars, five hundred dollars and one thousand dollars : Provided that a sufficient sum realized from such bonds shall be retained to complete the grading through the county or township in which it is subscribed : Provided that no election shall be held in any of the towns, cities or townships in said counties unless one half of the owners of real estate situate and living in such town, city or township shall first petition for an election on the subject of subscribing to the capital stock, as hereinbefore provided; and no subscription shall be made by any of the towns, cities or townships until the conditions of this proviso shall have been complied with."

"SECT. 9. That, for the payment of the interest on such bonds as may be issued by said counties, cities, towns or townships, the county auditor, or other officer discharging such duties, or the city or town treasurer, as the case may be, shall be authorized and required to assess annually upon the property of said city, town, county or township such per centum as may be necessary to pay said interest of said sum of money subscribed, which shall be known and described in the tax book as said railroad tax, which shall be collected by the treas-

urer under the same regulations as are provided by law for the collection of taxes in any of the counties, cities, towns, or townships so subscribing, and which shall be paid over by the said treasurer to the holders of said bonds, as the interest shall come due, on presentation of the coupons, which said coupons shall be reported to the county commissioners by said treasurer, or the council of any city or town where there are coupons from the bonds of such city or town, and all such coupons shall be cancelled by the county treasurer as soon as they are paid by them.

" That, for the purposes of this act, all the counties and townships in said counties, along the line of said railroad, or which are interested in the construction as herein provided for, shall be, and they are hereby declared to be, bodies politic and corporate, and vested with the necessary powers to carry out the provisions of this act ; and shall have all the rights, and be subject to all the liabilities, in respect to any rights or causes of action growing out of the provisions of this act.

" The county commissioners of the respective counties are declared to be the corporate agents of the counties or townships so incorporated and situate within the limits of said counties." 19 Statutes of South Carolina, pp. 239–241.

The power of the legislature, under the constitution of the State, to authorize townships to subscribe for stock, and to direct the issue of the bonds, in aid of the construction of railroads, appears to have been assumed, as undoubted, by the Supreme Court of the State, April 15, 1885, in *Chamblee* v. *Tribble*, 23 So. Car. 70 ; and July 14, 1886, in *Carolina Railway* v. *Tribble*, 25 So. Car. 260, 266.

By the act of December 19, 1887, the amending act of 1885 was further amended by adding a section providing " that, within ten years of the time when the bonds which may be subscribed to the capital stock of said corporation shall fall due, the money to pay the same shall be raised by taxation in the same manner, and paid out by the county treasurer, as provided for the payment of the annual interest on such bonds." 19 Statutes of South Carolina, p. 921. The principal, if not the only, object of this act would seem to have

been to extend to the principal sums of the bonds the provision of the earlier statute authorizing the assessment and collection of taxes "for the payment of the interest on said bonds."

On November 30, 1888, an action by taxpayers in township Ninety Six to recover back taxes paid by them, under protest, to meet the interest on bonds issued by the county commissioners in behalf of the township under the acts of 1882 and 1885, was sustained by the supreme Court of South Carolina, by concurring opinions of Chief Justice Simpson and Justice McIver, upon the ground that by the act of 1870, repealing the act of 1868, townships were left as mere territorial divisions, with no corporate powers, privileges or purposes; that, as no duty was imposed on them, or right given them, by the acts of 1882 and 1885, except to subscribe to stock in this particular railroad and to assess taxes to pay the subscription, they were without any corporate purpose; and therefore those acts, as applied to them, were in violation of the provision of the constitution. *Floyd* v. *Perrin*, 30 So. Car. 1; *Whitesides* v. *Neely*, 30 So. Car. 31.

Justice McGowan dissented, upon the grounds that the township " was certainly a corporation from the adoption of the constitution (1868) until 1870, when its corporate powers were withdrawn by the legislature, leaving the territorial division, with its lines, boundaries and name already fixed, like a lifeless body; ready, however, to have the new life of a corporation breathed into it;" that "no other power but the legislature could give it that new life;" that in 1885 the legislature passed the act chartering the railroad, in which it declared, for the purposes of this act, the counties and townships along the line of the road (of which this was one) to be corporations, with the necessary powers to carry out the provisions of the act, and with the rights and liabilities in respect to any causes of action growing out of its provisions; that "it may be thought by some to be rather a meagre corporation — scant in powers, authorities and officials as such; but it must not be overlooked that the legislature, which created it, had the undoubted right to give it such shape and form as it thought

proper — with a single power or a dozen;" and that the power to aid in building a railroad, when given by act of the legislature to a township corporation, whether a corporation already existing, or one created by the same act, was a corporate purpose, that is to say, a purpose benefiting the corporation. 30 So. Car. 24–30.

On December 14, 1888, petitions for rehearing of those cases were denied. 30 So. Car. 31, 33.

On December 22, 1888, an act, entitled "An act to provide for the payment of township bonds issued in aid of railroads in this State," was passed, to take immediate effect, beginning as follows: "Whereas certain townships in this State have, by their vote, expressed their willingness to subject themselves to taxation for the purpose of paying bonds issued by them in aid of certain railroads; and whereas, by reason of a defect in the acts authorizing the issue of said bonds, they have been declared invalid: Now, therefore, for the purpose of carrying into effect the expressed will of the people of said townships," it was enacted as follows:

SECT. 1. "The township bonds heretofore issued by county commissioners as the corporate agents of any township in this State, in aid of any railroad, by vote of the inhabitants of said township, are hereby declared to be debts of said township respectively having authorized the issue of the same. And the interest and principal thereof shall be paid, according to the terms of the said bonds or debt, by the assessment, levying and collection of an annual tax upon the taxable property in said townships, so far as may be necessary, in like manner and by the same county officials as the tax levied for county bonds in aid of railroads is assessed, levied and collected. Said tax to be known and styled in the tax books as the township railroad tax, and when collected shall be paid over by the treasurer of the county to the holders of said bonds as the interest thereon may become due and according to the terms thereof. All dividends received by or for said townships, on stock in railroad companies which have been aided by the said township bonds or debt, shall be applied by the county commissioners of the county in which said town-

ships are respectively situated, primarily towards the payment or retirement of said bonds or debt, and the surplus shall be expended in the improvement of the highways within the territorial limits of said township."

SECT. 2. "No tax shall be levied under the provisions of this act to pay the interest on any township bonds until the railroad in aid of which they were subscribed shall be completed through such township and accepted by the railroad commissioners." 20 Statutes of South Carolina, p. 12.

This statute is not mentioned in the questions certified, and, as it is not alleged or suggested that the railroad has been completed through this township, has no direct application to this case. We refer to it only as part of the history of legislation and decision in the State upon the subject.

On April 15, 1889, the Supreme Court of South Carolina held that, since, by its decision in *Floyd* v. *Perrin*, a township could not be authorized by the legislature to issue bonds in aid of the construction of a railroad, it followed that the act of 1888 could not be upheld as validating bonds issued by a township under the earlier acts, because the legislature could not ratify what it could not have authorized; but that the act of 1888 was an original exercise of the power of the legislature to authorize taxation for any public purpose, such as was the building of railroads in the State; and that the legislature, therefore, being satisfied of the consent of the township, had constitutionally fixed upon them the debt represented by the bonds previously issued without authority, and to be paid according to the provisions of the new act. *State* v. *Whitesides*, 30 So. Car. 579; *State* v. *Neely*, 30 So. Car. 587.

The first question certified to this court by the Circuit Court of Appeals is, "Whether, upon the averments of the complaint, the Circuit Court was bound, in passing upon this case, by the decision of the Supreme Court of South Carolina in *Floyd* v. *Perrin* 30 So. Car. 1?"

The general principles which must govern the decision of this question have been often affirmed by this court, and were stated by Mr. Justice Bradley, in delivering judgment, after great consideration, in the leading case of *Burgess* v. *Seligman*, as follows:

" The Federal courts have an independent jurisdiction in the administration of state laws, coördinate with and not subordinate to that of the state courts, and are bound to exercise their own judgment as to the meaning and effect of those laws.    The existence of two coördinate jurisdictions in the same territory is peculiar, and the results would be anomalous and inconvenient, but for the exercise of mutual respect and deference.    Since the ordinary administration of the law is carried on by the state courts, it necessarily happens that by the course of their decisions certain rules are established, which become rules of property and action in the State, and have all the effect of law, and which it would be wrong to disturb.    This is especially true with regard to the law of real estate, and the construction of state constitutions and statutes.    Such established rules are always regarded by the Federal courts, no less than by the state courts themselves, as authoritative declarations of what the law is.    But where the law has not been thus settled, it is the right and duty of the Federal courts to exercise their own judgment; as they also always do in reference to the doctrines of commercial law and general jurisprudence.    So when contracts and transactions have been entered into, and rights have accrued thereon under a particular state of the decisions, or when there has been no decision of the state tribunals, the Federal courts properly claim the right to adopt their own interpretation of the law applicable to the case, although a different interpretation may be adopted by the state courts after such rights have accrued.    But even in such cases, for the sake of harmony and to avoid confusion, the Federal courts will lean towards an agreement of views with the state courts if the question seems to them balanced with doubt.    Acting on these principles, founded as they are on comity and good sense, the courts of the United States, without sacrificing their own dignity as independent tribunals, endeavor to avoid, and in most cases do avoid, any unseemly conflict with the well-considered decisions of the state courts.    As, however, the very object of giving to the national courts jurisdiction to administer the laws of the States in controversies between

citizens of different States was to institute independent tribunals which it might be supposed would be unaffected by local prejudices and sectional views, it would be a dereliction of their duty not to exercise an independent judgment in cases not foreclosed by previous adjudication." 107 U. S. 20, 33, 34.

In the case at bar, the statutes of the State of South Carolina, under which the bonds were issued, were passed in 1882 and 1885. The bonds were issued in behalf of the township, and were purchased by the plaintiff, in 1886. It is alleged in the complaint, and admitted by the demurrer, that he purchased the bonds, relying upon their being legal and valid obligations of the township; and that, at the times of their issue and purchase, these bonds and like bonds of other townships were regarded and treated as valid securities by the corporate authorities of the township, by the public, by the legal profession, and by the legislative, executive and judicial departments of the State. And the decisions of the Supreme Court of the State, during the same period, appear to have assumed the validity of such bonds. *Chamblee* v. *Tribble*, and *Carolina Railway* v. *Tribble*, above cited.

The decision in *Floyd* v. *Perrin*, holding such bonds to be invalid, was by two judges only, against a strong dissent, and was not made until November 30, 1888, and a rehearing was denied December 14, 1888. Eight days after, on December 22, 1888, the legislature passed an act, to take immediate effect, declaring the bonds previously issued, in behalf of any township, to be debts of the township, and providing for their payment by taxation of the inhabitants. Five months later, on April 15, 1889, the Supreme Court of the State, in two laboured opinions, the one by Chief Justice Simpson and the other by Justice McIver, declared that, it having been decided in *Floyd* v. *Perrin* that the legislature could not authorize the township to levy a tax to pay the bonds, it could not ratify the proceedings of the township; but yet that the statute of 1888 was a constitutional exercise of the unlimited legislative power to authorize taxation for a public purpose, with the consent of the township. In each of the two cases, however, Justice Mc-

Gowan, who had dissented from the judgment in *Floyd* v. *Perrin*, delivered a concurring opinion in these words: "I concur. The meaning of the opinion of the court being that there is no necessity for the issue of any new bonds; but 'the debt' fixed upon the several townships by the act of 1888 shall be represented by the bonds heretofore issued, to be paid according to the provisions of the act; and I am authorized to say that such is the view of the other members of the court." *State* v. *Whitesides* and *State* v. *Neely*, above cited.

As the debt thus held to be imposed upon the township by the act of 1888 was the debt represented by the bonds issued under the act of 1885; as the tax for the payment of that debt under the new act was to be levied upon the property in the township by county officials in substantially the same manner as under the earlier statutes; and as the constitution of the State did not authorize the legislature, with or without the consent of the township, to vest its corporate authorities with power to assess and collect taxes for any but corporate purposes; it is not easy to understand how the later taxation could be held constitutional while the earlier was held unconstitutional; or how the result in *State* v. *Whitesides* and *State* v. *Neely* could be reached without practically overruling *Floyd* v. *Perrin*.

There not being shown to have been a single decision of the state court against the constitutionality of the act of 1885 before the plaintiff purchased his bonds, nor any settled course of decision upon the subject, even since his purchase, the question of the validity of these bonds must be determined by this court according to its own view of the law of South Carolina.

This question, which is presented in different forms by the second and third questions certified, lies in narrow compass. The constitution of South Carolina of 1868 authorized the legislature to vest the corporate authorities of townships or other municipal corporations with power to assess and collect taxes "for corporate purposes." By the act of 1870, townships were deprived of the corporate powers with which they had been vested by the legislature immediately after the adoption of the constitution, but were still defined by their names and

boundaries. By the act of 1882, as amended by the acts of 1885 and 1887, it was enacted that any city, town, county or township, interested in the construction of the railroad company named, might subscribe for stock and issue bonds in aid of the building of the railroad; and that, for the payment of the bonds and coupons, taxes might be assessed and levied upon the property of the township; and all the counties and townships along the line of the railroad, or interested in its construction, were declared to be bodies politic and corporate, for the purposes of this act, and to be invested with the necessary powers to carry out its provisions, and to have all the rights and be subject to all the liabilities, in respect to any rights or causes of action growing out of its provisions.

To aid in the building of a railroad is a public purpose, and, being for the general welfare of the ordinary municipal corporations, such as counties, cities and towns, through which the road is to pass, is a corporate purpose, within the meaning of a constitutional provision vesting in the legislature power to authorize municipal corporations to assess and collect taxes "for corporate purposes." *Livingston County* v. *Darlington*, 101 U. S. 407, 411, 413; *Harter* v. *Kernochan*, 103 U. S. 562, 571; *Anderson* v. *Santa Anna*, 116 U. S. 356, 363; *Bolles* v. *Brimfield*, 120 U. S. 759; *Johnson* v. *Stark County*, 24 Illinois, 75, 88; *Chicago &c. Railroad* v. *Smith*, 62 Illinois, 268, 276; *Nichol* v. *Nashville*, 9 Humph. 252, 268; *Brown* v. *Hertford Commissioners*, 100 No. Car. 92.

This is well settled, as to counties, under the constitution of South Carolina. It was assumed by the Supreme Court of the State in *State* v. *Chester & Lenoir Railroad*, 13 So. Car. 290, 317, and in *Connor* v. *Green Pond &c. Railway*, 23 So. Car. 427, 436; and it was admitted by all the judges in *Floyd* v. *Perrin*. 30 So. Car. 1, 13, 19, 27. See also *State* v. *Whitesides*, 30 So. Car. 579, 584, and *State* v. *Neely*, 30 So. Car. 587, 604. It has also been affirmed, as to towns, by the Circuit Court of the United States for the District of South Carolina, and by the Circuit Court of Appeals for the Fourth Circuit. *Darlington* v. *Atlantic Trust Co.*, 63 Fed. Rep. 76, and 68 Fed. Rep. 849.

In *Floyd* v. *Perrin*, it was also admitted that townships, having been declared by the legislature in the act of 1885, in express words, to be bodies politic and corporate, must be held to be corporations.  30 So. Car. 12, 16, 25.  But the ground on which the majority of the court in that case held that act to be unconstitutional was that the townships, having, under the existing statutes, no other corporate duty or right, except to subscribe to the railroad and to assess taxes to pay the subscription, were without any corporate purpose whatever, and therefore to authorize them to assess taxes to pay the subscription was in violation of the constitution.

We are unable to concur in that view, and are much better satisfied with the reasoning of the dissenting opinion.  When a township has been created by law, as a territorial division of the State, with no express grant of corporate powers, and with no definition or restriction of the purposes for which it is created, we are of opinion that it is within the power of the legislature, at any time, to declare it to be a corporation, and to confer upon it such and so many corporate powers, appropriate to be vested in a territorial corporation for the benefit of its inhabitants, as the legislature may think fit; and that the act of 1885 was therefore a constitutional and valid act, as far as regards all the kinds of municipal corporations named therein — cities, towns, counties and townships.

In *Weightman* v. *Clark*, 103 U. S. 256, the statute held to be unconstitutional purported to confer the power to issue bonds in aid of the construction of a railroad upon school districts, established and existing for educational purposes only. In *Lewis* v. *Pima County*, 155 U. S. 54, a territorial statute, purporting to confer upon a county the power to issue similar bonds, was held unconstitutional, because the fundamental law limited obligations of any municipal corporation to such as should be " necessary for the administration of its internal affairs."

The result is, that the first question certified must be answered in the negative, and the second and third questions in the affirmative, and the fourth question becomes immaterial.

*Ordered accordingly.*