## FOLSOM et al. v. GREENWOOD COUNTY.

### (Circuit Court, D. South Carolina. June 2, 1904.)

1. COUNTIES—INDEBTEDNESS—LIABILITY FOR DEBTS OF DISSOLVED TOWNSHIP.

A county in South Carolina, which, under the Constitution and laws of the state, can levy taxes only for specified county purposes, and has no power to contract obligations except such as are expressly or by necessary implication authorized by statute, cannot be adjudged by a federal court liable for the payment of bonds issued before the county was created by a township which was at the time a body corporate forming part of another county, but has, since its territory was included in the new county, been dissolved by a constitutional amendment; no provision having been made by the state for the payment of its debts.

At Law. Action at law on township bonds. On demurrer to complaint.

Shields & Mountcastle and H. J. Haynsworth, for plaintiffs.

F. B. Grier, J. B. Park, J. Wm. Thurmond, and C. C. Featherstone, for defendant.

BRAWLEY, District Judge. This case comes up on demurrer to the complaint, wherein the plaintiffs above named, citizens of Tennessee, seek a money judgment against the county of Greenwood upon certain overdue bonds and past-due coupons of the township of Ninety-Six. The prayer for judgment is:

"(1) Judgment against the defendant herein for the sum of $1,000, being the amount of bonds alleged to be due, with interest thereon from March 25, 1902, at the rate of 7 per cent. per annum, and the further sum of $6,230, being the amount of coupons alleged to be due, with interest on the respective coupons from the time of their maturity, respectively; (2) that said judgment be payable out of the general county funds by taxation upon the property within the county; or (3) by taxation upon the property within the limits of Ninety-Six township, as formerly established; (4) for such other and further relief as may be just in the premises, and for the costs of this action."

The validity of the bonds in question was established by the decision of the Supreme Court of the United States in Folsom v. Ninety-Six, 159 U. S. 611, 16 Sup. Ct. 174, 40 L. Ed. 278, and judgment was duly entered in this court against the township of Ninety-Six at the October term, 1896, for the amount of the past-due bonds and coupons then sued on. The township of Ninety-Six was declared to be a body politic and corporate under and by virtue of an act of December 23, 1882, chartering the Greenville & Port Royal Railroad Company, and acts amendatory thereof, and certain townships were by that act authorized to subscribe to the capital stock of such railroad company, and to issue coupon bonds in payment of such subscription, and the county commissioners of the respective counties were declared to be corporate agents of the townships so incorporated. 19 St. at Large S. C. pp. 239–241.

The township of Ninety-Six at the time of the execution of the bonds was situate in the county of Abbeville. Subsequently, by virtue of an ordinance of the constitutional convention in the year

¶ 1. Effect of dissolution and reincorporation of municipal corporation on indebtedness, see note to City of Uvalde v. Spier, 33 C. C. A. 506.

1895, the county of Greenwood was formed out of portions of Edgefield and Abbeville counties, and the territory comprised within the limits of Ninety-Six township was embraced in Greenwood county. By an amendment to the Constitution ratified February 3, 1903, the corporate existence of certain townships, including Ninety-Six township, was destroyed, and all offices under such townships were abolished, and all corporate agents removed. The defendant demurs to the complaint on the ground that it does not state facts sufficient to constitute a cause of action against the defendant county, and specifies as follows:

"(1) That the complaint shows on its face that plaintiffs are not entitled to the relief demanded or to any relief whatever against the defendant county, because: (a) That the obligation sued on is such that Greenwood county is absolutely without power to pay or discharge by taxation any judgment which might be rendered thereon against said county. (b) The said judgment could only be paid by taxation. Taxation is not a judicial function, but is entirely a legislative function. (c) The defendant county in all cases is only liable on such obligations as it has power to pay by taxation.

"(2) The complaint shows on its face that the defendant county was entirely without power or authority to contract the obligation sued on, and shows on its face affirmatively entire immunity on behalf of the defendant county from the alleged obligation or any liability thereon.

"(3) The complaint fails to state any facts tending to show any power or authority in the defendant county from the Legislature, or under the Constitution, either expressly or by implication, authorizing it to incur, assume, or become liable for the obligation sued on.

"(4) The complaint fails to state any facts showing that the defendant county is the successor, in law or in fact, of the defunct townships, or that the said townships merged into the defendant county.

"(5) The complaint shows on its face affirmatively that the obligation sued on is that of the township of Ninety-Six, which it had the power to contract and make, and which it did, in law and fact, make, contract, and enter into, and fails to state any facts tending to show that the defendant county issued, indorsed, adopted, ratified, or assumed, either expressly or by implication, the said township obligations, and fails to state any power whereby it could issue, indorse, adopt, ratify, or assume the said township obligations, or in any wise incur any liability thereon."

The bonds sued on appear on their face to be obligations of the township of Ninety-Six, and the act under which they were issued required that there should be assessed annually upon the property of the township such per centum as might be necessary to pay interest on the bonds subscribed, and further it was provided that all taxes collected from the railroad constructed through the township should be applied to the payment of such interest. It is not alleged that any taxes have been collected by the county of Greenwood for the purpose of paying such interest, or that there is any fund in the hands of the corporate authorities of such county applicable to this purpose, and it appears that the railroad in aid of which said subscription was made was never constructed; and therefore it will follow that the county of Greenwood is without means to pay any judgment rendered against it, except by taxation, and in support of the demurrer it is claimed that, under the Constitution of South Carolina, Greenwood county is limited in its power to levy and collect taxes to the following purposes, to wit:

"For educational purposes; to build and repair public roads, buildings and bridges; to maintain and support prisoners; pay jurors, county officers, and

for litigation, quarantine, and court expenses, and for ordinary county purposes; to support paupers, and pay past indebtedness." Const. 1895, art. 10, § 6.

· It is well established in South Carolina that counties can contract no obligations except such as are authorized expressly or by necessary implication by some statute. The Supreme Court of the State, in Cope v. Hampton County, 42 S. C. 20, 19 S. E. 1019, says:

"This court has had occasion heretofore to hold that counties, being merely parts of the state government, may partake of the state's immunity from liability. The state is not liable except by its own consent, and so the county is exempt from liability unless the state first consented. Their liabilities, whether grounding in tort or contract, are mere creatures of statutes, and they possess no power and can incur no obligations except such as are expressly provided for by statute. In the absence of statute, there is no county liability."

The act creating the county of Greenwood (22 St. at Large S. C. p. 612) provided that it should assume its pro rata share of certain indebtedness of the counties of Abbeville and Edgefield, apportioned by a commission appointed by the Governor. The commissioners so appointed made the apportionment, and the indebtedness which Greenwood county assumed was thereby fixed and determined. At that time the township of Ninety-Six was a body politic and corporate; it contracted the debts now sued on, and was liable for them; and the county of Greenwood in no way assumed, or did the Legislature in any manner impose upon it, the independent debts of the township, and no statute has been brought to my attention which imposes the obligation to pay these bonds on the county of Greenwood. There would seem, then, to be no other or greater obligation on the part of the county of Greenwood to assume this indebtedness, than there would be to assume the indebtedness of any other municipality within its territorial limits. The city of Greenwood doubtless owes debts. If its charter was repealed, and its corporate existence destroyed, it could be as well contended that the county of Greenwood was liable for its indebtedness, because the territory embraced in the city was merged in the county, as it can be that the said county is liable for debts of Ninety-Six township, which at the time of their creation was as much an independent corporation as the city of Greenwood now is.

The plaintiffs rely for sustaining this action upon Davenport v. Dodge County, 105 U. S. 241, 26 L. Ed. 1018, and the line of cases following it. In the Dodge County Case the bonds were issued by the county commissioners for Dodge county, and recited that "Fremont precinct, in the county of Dodge, is indebted," etc., and the Supreme Court says:

"The bond implies an obligor bound to do what it is agreed shall be done. Precincts in Nebraska are all political subdivisions of the county. They have no corporate existence, and cannot contract or be contracted with. They have no corporate officers, and can neither sue nor be sued. Certain officers are elected by the voters of the precincts for political, administrative, and judicial purposes, but they are in no sense the representatives of the people of the territory as a municipality." State v. Dodge County, 10 Neb. 20, 4 N. W. 370.

Precincts are governed by the county commissioners, the governing board of the county, and by the appropriate officers of the state. Their

relation to a county is like that of a ward to a city; having no corporate existence, no separate municipal authority. "They cannot," says again the Supreme Court of the state in the case last cited, "enter into contracts, directly or indirectly, nor assume obligations which the court might be called on to enforce. Hence the precinct cannot become the obligor of present bonds, and we think it follows that the county which thus has a corporate existence, and can contract and be contracted with, and upon whose officers is imposed the duty not only of issuing the bonds, but of providing for the payment of them, is a political entity bound by the obligation and charged with the debt created thereby." The judgment went against the county for the reasons thus stated. It was because the precincts had no corporate existence, and because the county commissioners issued the bonds in their behalf, that the county became liable to be sued. The reasons failing, the rule fails, for here the township was incorporated, and the bonds were issued in the name of the township, and by its corporate agents. Nor does it seem to me that the action of the plaintiff can be supported by the cases relied on, such as Broughton v. Pensacola, 93 U. S. 266, 23 L. Ed. 896, Mt. Pleasant v. Beckwith, 100 U. S. 514, 25 L. Ed. 699, etc., which rest upon this principle, thus stated in Mobile v. Watson, 116 U. S. 289, 6 Sup. Ct. 398, 29 L. Ed. 620: "Where the Legislature of a state has given a local community, living within designated boundaries, a municipal organization, and by a subsequent act or by a series of acts repeals its charter and dissolves the corporation, and incorporates substantially the same people as a municipal body, under a new name, for the same general purposes, and the great mass of the taxable property of the old corporation used for public purposes is transferred without consideration to the new corporation for the same public uses, the latter is the successor, in law, of the former, and liable for its debts" —for the facts here make such rule inapplicable. If Greenwood county was composed substantially of the same territory as Ninety-Six township, and was the same corporation under a new name, the case would be governed by the principle announced in the cases cited, but such is not the fact. Ninety-six township is but one of many townships which are embraced in the territory of Greenwood county. Most of them have no connection with Ninety-Six, except territorial propinquity. Some of them—notably Greenwood township—were expressly forbidden by the act under which Ninety-Six township made its subscription to incur any obligation of that nature. The people of Ninety-Six township, seduced by the delusive promises of adventurous promoters, and in the expectation of benefits to be derived from the construction of a railroad through its territory, voted for a subscription; and its bonds were improvidently issued, and allowed to be put upon the market, without adequate provision for the securing of the expected benefits. The Supreme Court of the United States has decided that these bonds, in the hands of bona fide holders, are valid obligations of Ninety-Six township, which was an independent corporation. It will be manifestly unjust to impose upon the other townships comprising Greenwood county, which were more provident, and refused to make a subscription, any obligation in respect to an indebtedness which the]

never incurred or assented to. This case seems to fall within the rule stated in Meath v. Phillips County, 108 U. S. 553, 2 Sup. Ct. 869, 27 L. Ed. 819. In that case the question was whether a decree could be recovered against a county upon certain drafts drawn by the levee inspectors, and certain bonds issued by the county clerk of the county under the provisions of an act which provided for the division of the overflowed lands of the county in the levee districts for the purpose of reclaiming the lands, and for the taxation of such lands to pay the expenses incurred in their behalf. The county court was then to levy a tax upon the property charged to be collected, like other taxes, and, when collected, was to be disbursed on the drafts of the inspectors. The court held that the county court acted, not as the representative of the county, but of the district, and says:

"The case of the County of Cass v. Johnston, 95 U. S. 360 [24 L. Ed. 416], and of Davenport v. Dodge County, 105 U. S. 237 [26 L. Ed. 1018], presented entirely different facts. In the Case of the County of Cass the law provided in terms for an issue of bonds in the name of the county, and in that of the County of Dodge we construed the law to be in effect the same. Consequently there were in those cases obligations of the counties payable out of special funds. Here, however, there was a manifest intention to bind the levee districts only by the obligations incurred, and not to make the county, in its political capacity, responsible for the payment of the debts that were created for levee purposes under these laws. The machinery of the county was to be used in the levy and collection of the special taxes required, but the county, as a county, was to be in no way involved. It follows that the prayer for a money decree against the county, as well as that for an exchange of the bonds authorized by the act of 1873 for the orders or warrants held by the appellant, must be denied."

And some remarks of Mr. Justice Miller in Heine v. Levee Commissioners, 19 Wall. 655, 22 L. Ed. 223, seem to be pertinent:

"The power we are here asked to exercise is the very delicate one of taxation. This power belongs in this country to the legislative sovereignty, state or national. In the case before us national sovereignty has nothing to do with it. The power must be derived from the Legislature of the state. So far as the present case is concerned, the state has delegated the power to the levee commissioners. If that body has ceased to exist, the remedy is in the Legislature, either to assess the taxes by a special statute, or to vest the power in some other tribunal. It certainly is not vested, as in the exercise of an original jurisdiction, in any federal court. It is unreasonable to suppose that the Legislature will have selected a federal court for that purpose. It is not only not one of the inherent powers of the court to levy and collect taxes, but it is an invasion by the judiciary of the federal government of the legislative functions of the state government. It is a most extraordinary request, and a compliance with it would involve consequences no less out of the way of judicial procedure, the end of which no wisdom could foresee."

The corporation which issued these bonds has ceased to exist. Its officers have been removed by the authority of the state, and no provision has been made by the state for the settlement of its indebtedness. This court cannot presume that the state will refuse, upon proper representations, to provide some remedy. It is a case of great hardship. The creditors have in good faith invested their money in obligations issued by this township under the authority of law, and trusting in the good faith and honor of the state. On the other hand the people of the township, induced by specious promises, were led to issue these

bonds, and have received no benefit whatever from their subscription. When the original suit was brought, it seemed to the court that it was a proper case for adjustment upon some terms that would be fair to all parties, and, probably as the result of its suggestions, some terms of compromise were almost arrived at. Considerations of honor and of interest alike would seem to require that the people of this township and others in like plight should make some effort to obtain the necessary legislation to enable them to make some settlement with their creditors, and, if the like spirit moves the creditors, it is not to be doubted that the required legislation will be secured. However that may be, it is not for this court, moved by the apparent hopelessness of the position of the creditors, to usurp functions which do not belong to it.

Being of opinion, for the reasons stated, that the plaintiffs have no cause of action against Greenwood county, it is ordered and adjudged that the demurrer be sustained and the complaint dismissed.