15691

PARROTT v. GOURDIN *ET AL.*
(32 S. E. (2d), 14)

*Mr. F. R. Hemingway,* of Kingstree, S. C., and *Mr. John I. Cosgrove,* of Charleston, S. C., Counsel for Defendants-Appellants,

*Mr. Henry E. Davis,* of Florence, S. C., Counsel for Plaintiff-Appellant,

November 15, 1944.

MR. ASSOCIATE JUSTICE OXNER delivered the unanimous Opinion of the Court:

This action involves the validity of Act No. 512 of the 1944 Acts of the General Assembly, 43 St. at Large, page 1414.

The Act creates "for and in behalf of Williamsburg County" a commission to be known as "the Williamsburg County Aeronautics Commission." It consists of three members, who are required to be residents of Williamsburg County and are appointed by the Governor on the recommendation of the members of the General Assembly from that County. One member of said Commission must also be recommended by the Mayor of the Town of Kingstree in said County. The Commission is empowered "to acquire by grant, purchase, lease, condemnation, or otherwise, real property and rights-of-way for airport and aeronautical purposes, and to so acquire approaches and obstruction rights in the matter of airport and aeronautical purposes"; "to receive by gift or donation monies and other property to be used by it in carrying out the purposes of this Act"; to "lease to the United States of America or to any agency thereof any and all of the property and rights acquired by said Commission under the provisions of this Act, or under the provisions of any other Act, statute or law"; and "to enter into agreements with the United States of America or any agency thereof relative to the establishment, operation and main-

tenance of an airport and aeronautical field in said County." The Act further provides: "That all property and rights received and acquired by said Commission, all conveyances, leases and agreements made by it and all other acts of said Commission under the provisions of this Act or of any other Act, Statute or law, shall be for and in behalf of and in the name of Williamsburg County. That all deeds, leases, agreements and all other papers executed by said Commission shall be executed in the name of Williamsburg County by said Commission * * *."

Under the terms of the Act, the Commission and the Treasurer of Williamsburg County are authorized to borrow a sum not exceeding $25,000.00, payable over a period of two years, the proceeds of which are to be used by the Commission in carrying out the terms of the Act. The Act declares that the notes evidencing such loan shall be binding obligations of said County, to the payment of which the full faith, credit and taxing power are pledged, and the Auditor is directed to annually levy a sufficient tax upon the taxable property of said County to pay the interest and the principal of said notes as they mature. The Act further declares that "it is the intent of this legislation that the said Commission shall act for and in behalf of said County."

This action was instituted by respondent, as a freeholder and taxpayer of the County of Williamsburg, in behalf of himself and others similarly situated, for the purpose of having said Act declared unconstitutional and enjoining the Commission from exercising the powers therein conferred. The validity of the Act is challenged in the complaint on two grounds. It is contended (1) that it was improperly enacted in that it did not receive three readings on three several days in each branch of the General Assembly, as required by Article 3, Section 18, of the Constitution; and (2) that under Section 6, Article 10, of the Constitution, the General Assembly did not have the power to authorize

the incurring of County obligations and the levying of a tax for the purposes stated in the Act. Appellants deny that the Act is invalid in any particular and in their answer allege that an agreement had been made by the County with the Federal Government whereby the Government would construct a modern airport in the County, costing approximately $600,000.00, upon the condition that the land for such airport was provided by the County; that the Town of Kingstree had agreed to contribute to the cost of the acquisition of the land in return for an interest in the airport; that the Act was passed to provide an appropriate agency with authority and power to deal with the Federal Government; and that the title to said airport would be vested in the Commission and possession delivered to it at the expiration of its use for military purposes, whereupon it would be used as a public airport. The answer further sets out in great detail the various benefits which it is claimed would accrue to the County on account of the construction and operation of said airport.

The case was heard on its merits in the Court below upon the pleadings and certain documents offered in evidence. The trial Judge held that the Act was properly enacted, but that it was unconstitutional in that it contravened Article 10, Section 6 of the Constitution, and issued a permanent injunction in accordance with the prayer of the complaint. From this order both parties have appealed, appellants from that portion of the order declaring the Act unconstitutional as violating Article 10, Section 6 of the Constitution and respondent from the holding of the trial Judge that the Act was lawfully passed.

We shall first discuss the exceptions of respondent. There was offered in evidence portions of the journals of the House and Senate to the effect that a bill was amended by striking out all after the enacting words and inserting in lieu thereof the Act in question. Apparent-

ly respondent offered this evidence for the purpose of showing that the Act in question was not read three times in each branch of the General Assembly. Appellants introduced in evidence a certified copy of the Act and a certificate of the Secretary of State showing that the Act received three readings on as many days in each branch of the General Assembly, as evidenced by the signatures of the President of the Senate and the Speaker of the House; was duly ratified, approved by the Governor, and the Great Seal of the State affixed thereon. Under these circumstances, the "enrolled bill" rule applies and the trial Judge properly held that the journals could not be used to impeach the Act. *State ex rel. Hoover v. Town Council of Chester,* 39 S. C., 307, 17 S. E., 752; *State ex rel. Richards v. Moorer,* 152 S. C., 455, 150 S. E., 269; *State ex rel. Coleman v. Lewis,* 181 S. C., 10, 186 S. E., 625; *Brailsford v. Walker, Mayor, et al.,* 205 S. C., ..., 31 S. E. (2d), 385. Respondent contends that the application of the "enrolled bill" rule constitutes a denial of due process of law under the Fourteenth Amendment to the Federal Constitution. No case is cited to support such contention and we think it is clearly untenable.

The first question raised by appellants is whether the purposes for which the proceeds of the notes mentioned in the Act are to be expended are among those enumerated in Article 10, Section 6 of the Constitution, the pertinent portion of which is as follows: "The General Assembly shall not have power to authorize any county or township to levy a tax or issue bonds for any purpose except for educational purposes, to build and repair public roads, buildings and bridges, to maintain and support prisoners, pay jurors, County officers, and for litigation, quarantine and court expenses and for ordinary County purposes, to support paupers, and pay past indebtedness."

Appellants contend that within the contemplation of this section of the Constitution (a) an airport is an integral part

of a public road or highway system and the levying of taxes to acquire land for same is an appropriate exercise of the power to authorize a county to levy taxes "to build and repair public roads," (b) an airport is a "public building," and (c) the expenditure of funds for an airport is for an "ordinary county purpose." We shall consider these contentions together.

Constitutional provisions of many of the states prohibit the Legislature from imposing taxes upon counties, cities, or other municipal corporations for corporate purposes, but vest in the Legislature the power to authorize such municipalities to levy taxes for such purposes. 51 American Jurisprudence, 417. The problem of determining with precision what constitutes a corporate purpose within the purview of such constitutional limitations has frequently been a difficult one and a source of much controversy. See extensive annotation in 46 A. L. R., beginning on page 609 and the supplemental annotation in 106 A. L. R., p. 906. Our Constitution of 1868, Article 9, Section 8, provided that the corporate authorities of counties and municipalities may be vested with power to assess taxes "for corporate purposes." During the era of railroad construction in the last century when many counties undertook in one way or another to aid in the building of railroads to promote the general economic welfare of their inhabitants, there was much controversy as to whether such aid constituted a corporate purpose. The cases from various jurisdictions are reviewed in the annotation in 46 A. L. R., beginning on page 728. Many Courts held that railroads were but improved highways and on this theory upheld such financial aid to railroads. Our own cases on this question, under the above section of our Constitution of 1868, are reviewed by the United States Supreme Court in the case of *Folsom v. Township of Ninety Six,* 159 U. S., 611, 16 S. Ct., 174, 40 L. Ed., 278. With the development of aviation, the Courts of

many jurisdictions in recent years have been called upon to determine whether the establishment and maintenance of a public airport is a corporate purpose and they appear to hold rather uniformly that such expenditure does constitute a corporate purpose. 6 American Jurisprudence, 12. The cases from various jurisdictions are cited and reviewed in the case of *Burnham v. Mayor and Alderman of Beverly*, 309 Mass., 388, 35 N. E. (2d), 242, 135 A. L. R., 750. Annotations on the subject will be found in 62 A. L. R., p. 777 and 69 A. L. R., p. 325. However, this Court has never had occasion to pass upon this question and as it is one of considerable importance and not necessary to the determination of this controversy, we refrain from undertaking to do so now.

The question we are called upon to determine is whether the General Assembly is empowered under Article 10, Section 6, of the Constitution of 1895, to authorize a county to levy a tax or issue bonds for the establishment of an airport. It will be noted that the limitation upon the power of the General Assembly under this section is much more restricted than that contained in the quoted section of the Constitution of 1868, now incorporated in the Constitution of 1895 as Section 5, Article 10. The question at issue was considered by this Court in *Gentry v. Taylor et al.*, 192 S. C., 145, 5 S. E. (2d), 857, and decided adversely to the contention of appellants. It was therein distinctly held that the issuance of bonds and levy of taxes by Spartanburg County to aid in the enlargement of an airport owned by the City of Spartanburg was not for an ordinary county purpose and that the Act authorizing the authorities of Spartanburg County to do so was unconstitutional as contravening Section 6, Article 10, of the Constitution of 1895. Appellants point out that the public airport in that case was owned by the City of Spartanburg and not by the County, and suggest that fact to distinguish

that case from the instant case. But the Court did not rest its decision upon that ground, but upon the ground that the bonds proposed to be issued and the tax to be levied therefor were not for an ordinary county purpose or for any other purpose enumerated in Article 10, Section 6, of the Constitution. The case of *Poulnot v. Cantwell*, 129 S. C., 171, 123 S. E., 651, so strongly relied on by appellants was fully considered and distinguished.

The *Gentry case* has been cited with approval in the subsequent cases of *Benjamin v. Housing Authority of Darlington County et al.*, 198 S. C., 79, 15 S. E. (2d), 737, and *Doran et al. v. Robertson et al.*, 203 S. C., 434, 27 S. E. (2d), 714. In the last-mentioned case it was held that the construction of sewerage systems in rural communities was not for an ordinary county purpose within the contemplation of Section 6, Article 10 of the Constitution.

Appellants have asked permission, which has been granted, to review the case of *Gentry v. Taylor, supra*. After mature consideration, we think it was soundly decided and adhered to the conclusions therein reached.

It is said that when the Federal Government discontinues the use of this airport, the buildings, hangars, reception and ticket rooms will be delivered to the Commission and title vested in it. It is contended that these buildings would constitute public buildings within the contemplation of the section of the Constitution under consideration. In support of that contention, our attention is called to the case of *Battle v. Willcox*, 128 S. C., 500, 122 S. E., 516, where it was held that a hospital erected by a township was a public building within the purview of this section of the Constitution. The distinction between a public hospital and an airport is obvious. We do not think it could be soundly said that freight yards, railroads and bus stations were among the purposes enumerated in Section 6, Article 10, of the Constitution, yet there is little, if any, dis-

tinction in principle between the expenditure of county funds for these purposes and the expenditure of such funds for an airport. All are facilities used in modern public transportation. It is true that an airport may be used at times for private transportation, but certainly at present its primary use is for public transportation for hire.

In view of the differences in the various constitutional limitations of other States, we derive practically no help from the cases from other jurisdictions. However, North Carolina has a constitutional provision which prohibits a county or other municipal corporation from levying a tax, without approval by a vote of the majority of the qualified voters, "except for the necessary expenses thereof." This constitutional provision has been construed by the Supreme Court of that State as referring to the ordinary and usual expenditures reasonably required to enable a county properly to perform its duties as a part of the State government, and to include the construction of public highways and bridges. *Henderson v. City of Wilmington*, 191 N. C., 269, 132 S. E., 25. While it has been held by that Court that the expenditure of public funds for the construction of a municipal airport is for a corporate purpose, *Goswick v. City of Durham*, 211 N. C., 687, 191 S. E., 728, it was held in *Sing v. City of Charlotte*, 213 N. C., 60, 195 S. E., 271, that the expenditure of funds for the operation and maintenance of a municipal airport was not a "necessary expense" of the City of Charlotte within the scope of the above constitutional provision. The Court apparently rejected the argument that an airport would come within the same classification as public highways.

Appellants next contend that Article 10, Section 6, is inapplicable for the reason that the Act creates an independent and separate political entity or subdivision of county government for the purpose of carrying out a public purpose. Appellants say that it was the intention

of the General Assembly "to provide funds for the purposes of its creation by a direct levy of taxes within the political subdivision pursuant to its inherent power so to do." On this theory it is argued that the notes authorized by this Act "are not county obligations but obligations of a separate political entity", whose boundaries are coextensive with Williamsburg County, but whose powers are independent of it. It is in all respects a 'municipal corporation' under the Constitution."

Appellants say that the General Assembly has authority to create such a separate political entity and directly impose a tax for the purposes of its creation under the cases of *Lillard v. Melton,* 103 S. C., 10, 87, S. E., 421; *Evans v. Beattie,* 137 S. C., 496, 135 S. E., 538; *Reese v. Hinnant,* 187 S. C., 474, 198 S. E., 403; *Battle v. Willcox, supra,* and Article 7, Section 11, of the Constitution providing that "the General Assembly may provide such system of township government as it shall think proper in any and all the Counties, and may make special provisions for municipal government."

But we do not think that the above constitutional provision and the cases cited, and others of like nature, are applicable to the situation here presented. This Act cannot be soundly construed as creating a separate political subdivision. Under its terms, the Commission is merely created as an instrumentality or agency to perform in behalf of the county the functions therein described. The Act specifically provides that said commission is created "for and in behalf of Williamsburg County"; that all property and rights acquired and all conveyances and agreements made by it, and all of its other acts "shall be for and in behalf of and in the name of Williamsburg County"; that all agreements and other papers executed by it "shall be executed in the name of Williamsburg County by said Commission"; and that it was the intent of the Act that said Commission "shall act for and

in behalf of said County." The notes are made binding obligations upon the County with the full faith, credit and taxing power of the County pledged to the payment thereof. The tax levied to take care of the principal and interest on said notes is levied and collected in the same manner as other taxes are collected. We think it is clear that the tax levied and the obligations authorized are those of Williamsburg County, and the power of the General Assembly to authorize such levy is governed by Article 10, Section 6.

The General Assembly has not undertaken to carve out of the territory of the state a special district or create a separate political subdivision. To sustain the contention of appellants would permit the General Assembly to do indirectly that which the Constitution forbids to be done directly. We do not think that Article 10, Section 6, of the Constitution may be circumvented by the simple device of creating a commission for and in the name of the County to expend funds raised by taxation for purposes not embraced within said constitutional provision.

The last exception of appellants is that the trial Judge erred in declaring the entire Act unconstitutional. Appellants contend that if the portion of the Act relating to issuance of notes and levy of taxes for the purposes stated is unconstitutional, the remainder of the Act is constitutional and capable of being severed from the unconstitutional part. The question of the constitutionality of the remaining portions of this Act was not raised in the pleadings and was not passed upon by the lower Court. In the printed arguments it is only briefly referred to by appellants' counsel and was not mentioned in oral argument. Under these circumstances, the question is not properly before us and we decline to pass upon it.

In conclusion, we may add that we do not discount the growing importance of aviation as a means of transportation or the benefits accruing to a county or city from the es-

tablishment of a modern airport. But, as pointed out in *Gentry v. Taylor, supra,* if the provisions of the Constitution are not broad enough or sufficiently elastic to meet modern needs and requirements, the remedy is by amendment. It may be noted that the General Assembly during its 1944 session passed a joint resolution submitting to the electorate a proposed amendent to Section 6, Article 10, of the Constitution, empowering the General Assembly to "authorize a county or township to levy a tax or issue bonds for the purposes of construction and maintenance of an airport or the construction and maintenance of landing strips." See 43 St. at Large, page 1572. The proposed constitutional amendment was overwhelmingly approved at the recent general election. Of course, the General Assembly has had no opportunity to act upon the question of ratification.

All exceptions are overruled and judgment affirmed.

MR. CHIEF JUSTICE BAKER and MESSRS. ASSOCIATE JUSTICES FISHBURNE, STUKES and TAYLOR concur.